JH

**FILED**

JUL 1 2 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TIBERIUS MAYS, | ) | |
| Petitioner, | ) | |
| | ) | Case No. 02-CV-5167 |
| vs | ) | |
| | ) | Honorable Amy J. St. Eve |
| NEDRA CHANDLER, | ) | |
| Defendant. | ) | Judge Presiding |

PETITIONER'S REPLY TO ATTORNEY GENERAL'S ANSWER

NOW COMES the petitioner, Tiberius Mays, pro se, pursuant to 28 U.S.C. Sec. 2254, to respectfully move this Honorable Court to grant this writ of habeas corpus on all issues, allow necessary discovery on any evidentiary hearing, reverse, remand, reduce, and/or vacate the petitioner's sentence and conviction according to the manifest constitutional errors displayed in this petition.

ARGUMENT

Petitioner involuntarily confessed to a beating of a Chicago tow truck driver who was hit four times with a pipe. Petitioner was con- victed after an unfair, unconstitutional trial and received ineffect- ive assistance of counsel during his trial and appellate processes. Petitioner was denied his constitutional rights on all his appeals. There are many substantial, injurious errors that caused the petition -er to receive a patently unjust trial and subsequent appeals.

ISSUES

Ground One

1. THE PETITIONER WAS DENIED HIS FIFTH, SIXTH, AND FOURTEENTH AMEND-
MENTS BY NOT BEING PROVIDED COUNSEL UPON REQUEST DURING INTERROGATION
AND BY BEING FORCED BY POLICE BRUTALITY AND THREATS TO PROVIDE AN IN-
VOLUNTARY CONFESSION UNDER THE STATE ATTORNEY'S WATCH. TR=Trial record

A. On November 4, 1987, Chicago Police arrested the petitioner
in a vacant apartment, open to anyone, by kicking him while he rested
on a bare floor. (TR. 5)  At the bench trial and in the court report-
ed sttement, the petitioner stated the the police hit and threaten
him after the initial arrest. (TR. 6)  The petitioner had all his
clothing removed and given a yellow gown to wear.  Petitioner asked
for counsel after being told by Detective Jaglowski that five or six
witnesses saw him commit the crime. (TR. 8)  Petitioner was told that
a Public Defender would not come out at that time of night by Det.
Jaglowski. (TR. 8)  Petitioner was handcuffed to a wall when he asked
several more times for counsel. (TR. 9-10)  Another police officer
held the petitioner when Det. Jaglowski hit the plaintiff in his sto-
mach repeatedly(TR. 10) which Det Jaglowski said that it ( the beat-
ing) would continue unless he cooperated. " Exhibit D " Det. jaglowski did ask me
cooperate with him. (TR. 68)

Assistant State's Attorney-ASA- Eva Clay came to speak to me by
herself. 'Exhibit D" (TR. 11)  I thought she was a public defender and upon find-
ing that she was not a public defender, I asked if she would get me
a public defender.  ASA E.Clay said, "that would be unethical" and
she refused to get me a public defender. (Exhibit One)  I told ASA Clay that I did
not want to talk to her so she left. (TR. 11)  After ASA Clay left,
Det. Jaglowski hit me repeatedly in my stomach and upper legs with
goves on while his partner held me and told me it would get worse
if I did not cooperate. (TR. 12) "Exhibit D"

ASA Clay cut me off during the forced confession when I told her
that the (arresting) police hit and threaten me. (TR. 13)  I was not
allowed to call anyone. "Exhibit D"  I was not allowed to sleep or given any food
until after the forced confession was finished. (TR. 14)  The peti-
tioner denied participation in the crime for many hours before being
forced to lie. (TR. 28)

ASA Clay stated that she was not my attorney. (TR. 74) because
she knew I had requested counsel in her presence.  The petitioner was
entitled to the help of a lawyer at or after the time that the judi-
cial proceeding have been initiated against him, whether by way of
formal charge to arraignment. <u>King v. Illinois</u>, 406 U.S. 682, 689.
The petitioner never knowingly and intelligently waived his right he
invoked when he specifically stated that he wanted counsel.  That I
was advised of my rights by police interrogators does not make the
interrogation lawful since the effective right to counsel at this
early stage can only be satisfied by actual consultation with and
continued presence of counsel prior to and during such focused inter-
rogation.  <u>Haynes v. Washington, 373 U.S. 503, 512-13.</u>

An accused in custody who has expressed his desire to deal with
the police only through counsel is not subjected to further investi-
gation. <u>Edward v. Arizona</u>, 451 U.S. 477, 485 (1981)  Det. Jaglowski
continued to question the petitioner after he asked for counsel on
several occasion.  The petitioner's response to continued police
questioning was held to not render petitioner's initial request for
counsel ambigious under the rule that all questioning must cease af-
ter petitioner requested counsel. <u>Smith v. Illinois</u>, 469 U.S. 91

When the petitioner invoked his right to counsel during interro-
gation, the Court must first presume petitioner has not invoked a

valid waiver to the full extent of his constitutional right to coun-
sel. <u>U.S. ex. rel. Espinoza v. Farmer</u>, 813 F.2d. 117, 123 (7th Cir.
1987); <u>Connecticut v. Barrett, 107 S.Ct. 828  The State has the bur-
den</u> of establishing waiver .  Whether interrogation complied with
<u>Miranda v. Arizona</u>, 384 U.S. 436, is subject for pretrial suppress-
ion motion. <u>U.S. v. Sassi</u>, 966 F.2d. 283, 285 (7th Cir. 1997).

Not only did the petitioner request counsel with Det. Jaglowski,
he twice reqeusted counsel with ASA clay.  The Chicago Police stated
that they stated the <u>Miranda</u> warning to the petitioner. (TR. 47)
There is no evidence that the petitioner waived his <u>Miranda</u> rights
knowingly and intelligently before giving a forced confession,
therefore this has been held to warrant suppression of the confess-
ion <u>Tague v. Louisiana</u>, 444 U.S. 469, 470-71  The State failed to
call ASA Clay to rebut petitioner's claim that he requested an at-
torney. <u>People v. Anderson</u>, 709 N.E. 2d. 661.  The U.S Supreme
court has always set high standards of proof for the waiver of con-
stitutional rights. <u>Johnson v. Zerbst8</u>, 304 U.S. 458

As set forth later in this brief, the petitioner's credibility
was improperly impeached by the trial judge.  The petitioner's
forced confession necessiates a suppression by virtue of his denial
of his <u>Miranda</u> right to stop all interrogation upon request for
counsel.  <u>Massiah v. U.S.</u>, 307 U.S. 201.
B. It is well established that "certain interrogation techni-
ques" either in isolation, or as applied to the unique character-
istics of a particular suspect, are so offensive to a civilized sy-
stem of justice that they must be condemned under the Due Process
clause. <u>Miller v. Fenton</u>, 474 U.S. 104, 109 (1985).  Evidence sur-

-4-

rounding the making of a confession bears on its credibility as well as it voluntariness. jackson v. Denno, 378 U.S. 368, 386 (1964)  Involuntary confession are "to an unascertained extent" untrustworthy. Rogers v. Richmond, 365 U.S. 534, 541.

"Untrustworthy" defeines the petitioner's confession after being interrogated for over 8 hours by Chicago Police. U.S. v. Jenkins, 938 F.2d. 934, 938 (9th Cir. 1991).  The petitioner stated that he was hit in the stomach and legs repeatedly on three occasions.  The petitioner did inform the paramedic at the Cook County Jail upon arrival on Nov. 4, 1987, about being hit and in his report, the stomach and upper legs areas are marked on a body picture. (Exhibit A&D) This Court can not reasonable believe that the Chicago Police whom committed brutality woudl tell on themselves in court.

A criminal conviction based on a confession obtained with brutality and violence is constitutionally invalid under the Due Process Clause. Brown v. Mississippi, 278 U.S. 278.  In determining whether the petitioner's will was overborne, certain Factors are taken into account including: (1) lack of education; (2) physical brutality; (3) Threats of physical brutality-Malinski v. New YOrk, 324 U.S. 401; (4) no sleep- Legra v. Denno, 347 U.S.556; (5) requested counsel: (6) use of physical punishment such as deprivations of food- Clewis v. Texas, 386 U.S. 707; (7) length of detention-Chambers v. Florida, 309 U.S. 227, 235-238; (8) repeated and prolonged nature of questioning -Ashcroft v. Tennessee, 322 U.S. 143; (9) capacity of self-determination ; (10) access to bathroom/use of phone.  No confession is admissible in evidence unless made freely and voluntarily and not under the influence of promises or threat/no phone use. Darwin v. Connecticut, 391 U.S. 346, 349.

ASA Clay purposefully ignored the petitioner's statement about being hit and threaten in the court reported statement.  ASA Clay had an obligation to safeguard the constitutional rights of the petitioner being a representative of all people. People v. Lyles, 478 N. E. 2d. 291, 308 (1985)  As a state attorney, Eva Clay had an obligation to ensure the petitioner received a fair court reported statement.  ASA Clay's intention was only to secure a confession.  She did not care about the petitioner's constitutional rights or about him being hit and threaten by police officers.  ASA Clay knew the petitioner had made no phone call, was not allowed to sleep or eat anything, and that he asked for counsel.  ASA Clay also knew the petitioner had a minimal criminal background.

The trial judge characterized the petitioner as a jailhouse lawyer type and said that the petitioner was familiar with the criminal justice system. (TR. 84).  This characterization if false and misleading.  It is improper for a judge or prosecutor to refer to defendant's prior conviction as substantive proof that petitioner was familiar with the legal system and implying that because of his familiarity, petitioner is lying and trying to get out  the easy way. People v. Rogers, 526 N.E.2d. 655, 660-61.  The petitioner never studied any law and had never been through a felony trial in his life.  The petitioner was not criminally sophisticated that he knew how to deceive professional police and a state attorney.

The evidence outside of the confession is (1) a wallet found in a vacant apartment's toilet without petitioner's fingerprints, (2) a pipe with petitioner's fingerprints, (3) one witness stating the the petitioner had on similar clothing as the man hitting the victim( could not see face), (4) no blood on petitioner's clothing taken off

-6-

his body, (5) no eye witness testimony from victim.  The evidence is
not overwhelming just circumstantial, which is why a confession was
froced to secure a conviction.  It took 8 hours of police custody with
counsel, food, sleep, bathroom access, not contact with family or
friends, dressed in a yellow gown, ignorant of the law, being beaten
and threaten to produce a confession. The not investigated facts about
the police brutality and coercion produces a very negative underdeve-
lopment of the necessary facts of this case.

Therefore, for the foregoing reasons, the petitioner moves this
Honorable court to reverse and remand this case for a new trial or
reverse the conviction and sentence completely granting petitioner
his freedom from incarceration.

Groung Two

2. PETITIONER WAS DENIED HIS EIGHTH AND FOURTEENTH AMENDMENT
RIGHTS OF THE U.S CONSTITUTION AND ILLINOIS CONSTITUTION ART ONE, SEC.
11., BY BEING DISPROPORTIONATELY SENTENCED WITH THE ELEMENTS OF THE
BRUTAL AND HEINOUS STANDARD/EXTENDED TERM.

( A petitioner may reformulate his claim as long as the substan-
ce of the argument remains the same. Chambers v. McCaughtry, 264 F.3d.
732, 738 (7th Cir. 1994))

The petitioner alleges an injurious, substantial deprivation from
a grossly, disproportionate sentence of 65 years for attempt murder
and armed robbery.  The petitioner receive 50 years for attempt murder,
which is 20 years away from the statutory maximum of 30 years.  This
case was the first felony convictions for the petitioner, whose prior
conviction was only a misdemeanor conviction.

The "brutal and heinous" standard has been found to be used in
criminal behavior involving prolonged pain, torture or premeditation,

-7-

which none of these factors were present in the petitioner's case. People v. LaPointe, 431 N.E.2d. 344.  Illinois Courts have ruled that every single murder is by nature unnecessary and all murders are brutal and heinous to a degree.  Many murdered victims are defenseless when killed.  The extended term provision was not created to extend or convert every murder or attempt murder into an extraordinary offense subjected to an extended sentence.  The petitioner's act were deemed deplorable, but not so exceptional to justify an extended term

The constitutional principles of proportionality have been recognized explicitly in the U.S. Supreme Court for over a century. Solem v. Helm, 463 U.S. 277, 284-86.  The petitioner's sentence of 65 years, 50 for attempt murder, is determine disproportionate by three factors: (1) gravity of the offense and the harshness of the penalty; (2) sentence imposed on other criminals; (3) sentence imposed for commission of the same crime in other jurisdictions. Helm, 463 U.S. at 292.

The punishment should fit the crime, However, the record demonsrates that the trial judge ignored the petitioner's significant evidence of his rehabilitative potential. Hutto v. Finney, 437 U.S. 678; People v. Bedony, 527 N.E.2d. 916, 920-21( reduce attempt murder from 45 to 30 years.) I was unofficially offered 12 to 15 years in May 1988.(Exhibit H ")

In the Illinois Department of Correction 1992 Statistical Presentation, the average sentence for attempt first degree murder in 1989 out of 179 was 12.6 years (mean) and 10 years (median) (Exhibit B).  Only 119 cases out of 3,143 cases of Class X offenses in 1989, which include attempt first degree murder, wee outside the normal sentence limitation.

The petitioner's attempt murder was not premediated, nor was

-8-

torture or prolonged pain.  Petitioner displayed no callous behavior
and at sentencing, he expressed strong remorse. (TR. 179-180)  At
the trwo pre-trial conference in October and December 1988, petitioner
was offered 50 and 45 years respectively by Judge Getty, thereby dis-
playing a predisposition for an extended term before hearing all the
evidence. (Exhibit Two(2))

Applying the "brutal and heinous indicative of wanton cruelty"
standard when the facts do not permit such is arbitrary, an unconsti-
tutional application of law with facts, unsupported by evidence.  The
brutal and heinous standard was used as though the petitioner acted
in a fashion that set him apart from the norm of other attempt murder
case.  The Eighth Amendment bans cruel and unusual punishment for
penalties that are grossly disproportionate to the offense.  The F-
ourteenth Amendment in respect to the administration of criminal
justice requires that no different degree or greater punishment shall
be imposed on one that on all others for like offenses. Hudgson v.
Vermont, 168 U.S. 262

In Illinois, the rehabilitatve potential is weight against the
punishment for the crime, another way to make sentences proportionate.
Just as the U.S. Constitution succinctly prohibits "excessive sent-
ences", the Illinois constitution does the same.  Very few defendants
received an extended term for attempt murder in Illinois in 1989.
Before the petitioner changed from publice defender, Tom Powers, to
paid attorney John DeLeon, the state was unofficially looking to
plea bargain at 15 years (Exhibit C).

Wherefore, for the foregoing reasons, the petitioner moves re-
spectfully this Court to reduce the sentence to 30 or less years on
the attempt murder and run the other sentence concurrently or reverse

and remand for a new sentencing hearing.

GROUND THREE

3.PETITIONER WAS DENIED HIS FIFTH AND FOURTEENTH AMENDMENT OF
THE UNITED STATES CONSTITUTION AND ILLINOIS CONSTITUTION ART IV, 98
(c1) WHEN HE WAS CONVICTED AND SENTENCED OF MORE THAN ONE OFFENSE
FROM THE SAME PHYSICAL ACT, WHICH WAS THE LAW AT THE TIME OF HIS OF-
FENSE AND REGULARLY, FOLLOWED STATE PRACTICE.

The Supreme Court of Illinois under the single subject rule
held in People v. King, 363 N.E.2d. 838, that prejudice results to
a defendant only in instances where more than one offense is carved
from the same physical act.  State court decisions are not "adequate"
to bar federal habeas review of this underlying claim unless they
rest upon firmly established and regularly followed state practice,
which must be applied in consistent, principle way. U.S. es. rel.
Bell v. Pierson, 267 F. 3d. 544 (7th Cir. 1994).  The U.S. Supreme
court explained in Harris v. Reed, 489 U.S. 255, 266,that the state
court must make a plain statement that it relies on an independent
and adequate state ground, and concluded that the appellate court's
decision falls short of an explicit reliance on a state ground.

The trial judge erroneously convicted the petitioner of attempt
murder when the physical act forming the basis of the crime clearly
demonstrate force to rob, not to kill.  The factors that are used to
determine one act is one or more crimes are: (1) existence or non-
existence of an intervening events; (2) time intervals between suc-
cessive parts of defendant's conduct; (3) identity of victim; (4)
similiarity of the acts performed; (5) whether all of the conduct
occured at the same location; (6) prosecutorial intent as reflected
in charging instrument.  People v. Baity, 465 N.E. 2d. 622 (1st Dist.
1984).

-10-

In the petitioner's case, the crime occurred with the same vic-
tim, no time intervals between any part of the petitioner's conduct,
no existence of intervening events, everything happen at the same
location.  The trial judge offered no rationale for finding the peti-
tioner guilty of two offense from the same physical act, therefore
the petitioner may only be convicted of one offense. People v. Segura
,533 N.E. 2d. 802 (1988)
An armed robbery where the robbery victim was severely injured is in-
sufficient in itself to support a finding of attempt murder.  People
v. Davies, 365 N.E. 2d. 628, 630-33.  The petitioner did not admit
to intending to kill the victim (TR. 118), his forced admission was
to robbery. The intent to kill may not be inferred from the evidence
when the existence of another fact inconsistent with the intent to
kill, such as intent to rob, can be inferred with equal certainty
from the same evidence. Yedar v. Centre Properties, INc., 527 N.E.2d.
414, 421  When more that one offense arises from the same physical
act, a judgement of conviction and sentence should be imposed on the
more serious offense only.  People v.Lindsay, 75 N.E. 2d. 1270.
In IN RE SNOW, 120 U.S. 247, the Court held that a person is unlaw-
fully convicted on each of several indictments for alleged separate
offenses which in fact constitute one continuous offense, he can be
punished only under one of such conviction and for an attempt to en-
force more that one ..., he is entitled to a writ of habeas corpus.

When multiple charges are brought, the petitioner is 'put in
jeopardy' as to each charge.  A long history of adhering to the prin-
ciples of law stating if the exact same physical act forms the basis
of more one offense, the petitioner may only be convicted of one of-
fense.  Adverse consequences and the ramification of those convictions

-11-

on future sentences that the petitioner may receive, continue to be valid reasons for prohibition of multiple convictions. Ball v. U.S., 470 U.S. 856, 865.

IN People v Pack, 341 N.E. 2d. 4,8, the defendant entered his employer's house and choked the sleeping employer until he thought she was dead, then took her purse as an apparent after thought, the robbery conviction was reversed.

The Illinois Appellate Court affirmed the petitioner's issue concerning "One Act, One Crime", however the Appellate Court is without authority to override the Illinois Supreme Court or modify Illinois Supreme Court decisions. Beagley v. Andel, 374 N.E. 2d. 929. The petitioner was denied due process and equal protection of the law to be treated as similarly situated defendants concerning "one act, one crime" law . The law in Illinois is clear and favorable to the petitioner at the time he was arrested for this case.  Nothing can destroy a government more quickly than its failure to observe its own laws.

The Appellate Court overlooked the undisputed evidence that the force used in the robbery preceded the taking of property and did not follow the taking gratuitously. There is no direct evidence that the purpose to kill was an objective.  The same force used to rob is used to support intent to kill.  The petitioner did not receive a full or fair hearing on the facts in this case and is entitled to an evidentiary hearing. Gonzalez v. pliler, 341 F.3d. 897.

Wherefore, for the foregoing reasons, the petitioner request that either his attempt murder or armed robbery conviction and sentence be vacated or a new trial from a reverse and remand is granted respectfully by this Court.

GROUND FOUR

-12-

4. PETITIONER WAS DENIED HIS SIXTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION TO EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS FROM BOTH HIS TRIAL AND APPELLATE COUNSELS FOR THEIR FAILURE TO PRESENT/RAISE/OBJECT CONCERNING MERITORIOUS ISSUE OF THE MATERIAL WITNESS RULE.

(This paragraph is to be used as the first paragraph for grounds five, six, and seven, which deal with ineffective assistance of trial and appellate counsels.)

Under the Sixth Amendment of the U.S. Constitution and Illinois Constitution, the petitioner was entitled to effective assistance of counsel at trial and appellate levels. His trial and appellate counsels' representation fell below an objective reasonable standard, which resulted in insurmountable prejudice to the petitioner. Thus, pursuant to 28 U.S.C. Sec. 2254, petitioner's petition for a writ of habeas corpus should be granted, and he should be released from state custody. Strickland v. Washington, 466 U.S. 668, 687-88, 694-96 (1984) Appellate counsel is ineffective for failing to raise trial counsel's ineffectiveness. U.S. ex. rel Barnard v. Lane, 819 F.2d. 798 (7th Cir. 1987). Petitioner was prejudiced under Strickland test by deficient performance of a appellate counsel in preparing a brief that resulted in refusal to consider issues on merit. Hendricks v. Lock, 238 F.3d. Finally, appellate counsel is ineffective when she fails to brief a patently meritorious issue; trial and appellate counsel is expected to be familiar with the law. People v. Berry, 264 Ill. App. 3d. 773,782.

Failure to call witnesses at trial, where a credible defense exists and when the state law requires it, falls below an objective standard of representation, thus constituting ineffective assistance of counsel Harris v. Reed, 894 F.2d. 871, 878-79 (7th Cir. 1990).

The Illinois material witness rule provided the petitioner with the Sixth Amendment compulsory process, which is applicable to state criminal trials where witness testimony sought to be both "material and favorable ". Washington v. Texas, 388 U.S. 14,18.

The material witness rule in the Illinois Revised Statute 1989, Chap. 38 ¶114-11(d) states when the voluntary nature of a confession

-13-

("Exhibit E")

is questioned in a motion to suppress, the state must produce "all"
material witnesses on the issue of voluntariness or satisfactorily
explain their abaence.  Failure of counsel to interview witnesses
may be indicative of deficient representation, particularly when the
witness is known to counsel and her testimony would have been exone-
rating. People v. Coleman, 701 N.E.2d. 1063

Petitioner's forced confession was made before ASA Clay.  At the
motion to suppress, the State did not produce ASA Clay or explain her
absence.   The Illinois supreme Court until 1992 referred to an un-
"broken line of cases" that followed the material witness rule.
People v. Armstrong, 282 N.E.2d. 712,715(1972); People v. Sims, 173
N.E. 2d. 494.  The purpose of the material witness rule is to safe-
guard against improperly induced confession and not to require an
empty exercise. People v. Smith, 307 N.E. 2d. 353.

Petitioner's trial counsel never raised the material witness
rule at trial, never objected or put it in his post-trial motion,
thereby waiving th issue for appeal.  The Appellate counsel failed
to RAISE an ineffectiveness assistance of counsel issue pertaining to
trial counsel's failure to perserve the material witness rule issue
of ASA absence at the suppression hearing.

ASA Clay was a material witness.  IN People v. Thomas, 309 N.E.
2d. 744, a vacation did not excuse a policemen as a material witness
involved in a confession from testifying at the suppression hearing.
Clearly, there is a violation of the material witness rule in peti-
tioner's case which is quite different from the case mention on Page
13 on the ASST. Attorney General's Answer because there is evidence
that petitioner was induced to make a statement and that his will was
overborne; it was not necessarily for a detective to testify at

-14-

defendant's motion to suppress confession when when detective's partner testified.

In People v. Lumpp, 447 N.E.2d. 963, the material witness rule apply where defendant all-eged confession was involuntary because the police ignored his request for counsel. Material witness rule apply because of psychological coercion making confession involuntary. People v. Brooks, 505 N.E.2d. 336 (1985)  The preclusion of ASA Clay resulted in an fundamentally unfair trial.

Since the state court proceeding for the suppression hearing was deficient, the petitioner did not receive a full and fair suppression hearing. Material facts from ASA Clay were not adequately developed. The state court factual determination was not resolved and the presumption of correctness is destroyed.  An evidentiary hearing is entitled with discovery. Goodwin v. Johnson, 132 F.3d. 162; Weidner v Thieret, 932 F.2d. 626, 631 (7th Cir. 1992).

The material witness rule allowed the petitioner a face to face meeting with witnesses as held under the 6th Amendment clause guarantee to confront witnesses. Coy v. Iowa, 487 U.S. 1012.  All persons having authority or control over the petitioner ( People v. Wagoner, 133 N.E. 2d. 24, 30), all person allegedly involved in the use of coercion (People v. La Coca, 94 N.E. 2d. 178, 183); all person who were present at the time of the confession was made, and at the time of alleged brutality (People v. Sammons, 161 N.E. 2d. 322,324) must be produced produced as material witnesses, and if not, the confession must be excluded.  Detective Jaglowski was not present when ASA Clay came to speak to petitioner the first time as claimed. The trial court was also required to follow established rules of criminal procedures and evidence designed to assure both fairness and reliability in he ascertainment of voluntariness of petitioner's

-15-

forced confession.  The material witness rule help assure the accu-
racy of the truth determining process. <u>Dutton v. Evans</u>, 400 U.S. 74, 89.

Wherefore, for the foregoing reasons, the petitioner move this
Court to reverse and remand this case for a new suppression hearing
and trial or grant the petitioner his freedom and/or order an evidien-
tary hearing.

GROUND FIVE

5. TRIAL AND APPELLATE COUNSEL WERE INEFFECTIVE BECAUSE NEITHER
RAISED/OBJECTED PROPERLY THE VARIOUS IMPEACHMENT ERRORS THAT VIOLATED
HIS FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS OF THE U.S. CONSTI-
TUTION.

(THE FIRST PARAGRAPH FROM GROUND FOUR ABOUT INEFFECTIVE ASSIST-
ANCE OF COUNSEL SHOULD BE USED AS FIRST PARAGRAGH HERE FOR SPACE. )

Under the *Strickland standard, the petitioner's trial counsel
was ineffective for failure to object to and trial judge's and prose-
cutor's improper impeachment tactics and State's use of prior convic-
tions for impeachment.  To access the impeachment value of evidence
of prior convictions (Davis v. Alaska, 415 U.S. 308, 316), five fac-
tors are used: (1) impeachment value of prior convictions; (2) point
in time of conviction and witness subsequent history; (3) similiarity
between past and charged crime; (4) importance of defendant's testi-
mony; (5) centrality of credibility issue. <u>U.S. v. Mahone</u>, 537 F.2d.
922 (7th Cir. 1976).

In four respects, the State erroneously impeached the petition-
er.  First, the State used a 1410 probation for drug possession to
impeach, which is not a conviction.  Secondly, the State did not in-
troduce certified copies of petitioner's conviction at trial to im-
peach.  Thirdly, the State improperly cross examined the petitioner

-16-

about his conviction.  Finally, trial judge explicitly stated that he relied on these convictions in finding the petitioner impeached/ not credible.  This Court can not assume that the trial judge did not use improper evidence to impeach the petitioner.  The trial judge and prosecutor errors overcome the confidence of the conviction.  The trial judge did not believe anything the petitioner said about asking for a public defender or a phone call or that he was high on drugs and alcohol at the time of the crime. (TR. 85-86)

Petitioner 's testimony at the suppression hearing was stipulated for the bench trial.  Four impeachment error require a reversal and remand for a new trial. Petitioner's credibility was very important and influential on the outcome of the trial. U.S. v. Whitmore, 359 F. 3d. 609.  The party seeking to impeach testimony has the responsibi- lity of presenting proper evidence of an impeaching convictions. Lucas v. johnson, 132 F. 3d. 1069; People v. Yost, 399 N.E. 2d. 1283.  Only those convictions bearing on a witness credibility may be admitted. People v. Randolph, 365 N.E.2d. 930.

Impeachment is used solely to attack the credibility of a wit- ness.  The credibility of a witness may not be attacked upon cross examination by questioning the petitioner concerning specific acts of misconduct not leading to a conviction. People v. Celmar, 163 N. E. 421.

The petitioner testified and did not disclose his prior misde- meanor conviction on direct, however the State brought out the misde- meanor conviction and 1410 probation on cross examination without convictions by public record certified on rebuttal, which was impro- per and against the law. Willis v. Reed, 100 U.S. 621; People v. Smith , 610 N.E. 2d. 91.

The prosecutor exceeded his scope of permissible questioning of

the petitioner at cross examination regarding prior convictions. <u>U.S.
v. Roboinson</u>, 8 F.3d. 398 (7th Cir. 1993). Mistakenly admitted evi-
dence or prior convictions or crimes can impigne upon fundamental
fairness of trial to warrant habeas relief. Duvall v. Reynolds, 139
F.3d. 768

Under the Federal rules of Evidence 609, and Illinois law, Peo-
ple v. Montgomery, 268 N.E.2d. 695 (1971), which adopted the Federal
Rules of Evidence, the general rule to be followed in impeaching with
proof of a prior conviction is:

> For the purpose of attacking credibility of a wit-
> ness, evidence that has been convicted of a crime,
> except a plea of no contendre, is admissible but on-
> ly if the crime, (1) was punishment by death or im-
> prisonment i$^N$ excess of one year under the law under
> which he was convicted or(2) involved dishonesty or
> false statement regardless of the probative value of
> the evidence of the crime is substantially outweigh-
> ed by the danger of unfair prejudice. 268 N.E. 2d.
> at 698

The petitioner testified in his behalf may be impeached only by
the record of the conviction or an authenticated copy thereof of the
prior conviction. <u>People v. White</u>, 406 N.E. 2d. 7, 10. At no time
during the entire proceeding did the State introduce certified copies
of the petitioner's conviction.

The trial judge never wavered in his reliance of the State's
proof of convictions. Petitioner's trial counsel did not object or
place these errors in his post trial motion. If trial court relied
on the presentence report to impeach the petitioner, that also was un-
justified and a plain error.

The petitioner was prejudiced by the deficient acts of appellate
counsel for failure to argue the impeachment errors under trial coun-

sel's ineffectiveness. The Appellate Court refused to address the issue stating that the trial attorney did not perserve it. Appellate counsel had an opportunity to fully address the impeachment errors.

The theft of service conviction is insufficient to impeach the petitioner. The petitioner was apprehended before boarding the train, therefore he never obtain the use of services, which would require a reversal. People v. Davis, 283 N.E. 2d. 317,318. The petitioner only jumped over an active el train platform booth and was immediately captured and sent to jail.

Therefore, for the foregoing reasons and errors either individually or cumulatively, the petitioner move the Court to reverse the conviction or remand the case for a new trial.

GROUND SIX

6. THE PETITIONER WAS DENIED HIS FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE U.S. CONSTITUTION BY HIS TRIAL AND APPELL- ATE COUNSELS FAILURE TO OBJECT/RAISE HIS IMPROPER CONVICTIONS FOR THREE AGGRAVATED BATTERIES, LESSER INCLUDED OF ATTEMPT MURDER.

( Use the first paragragh of ground four for the first paragraph for this issue).

At the conclusion of the petitioner's bench trial, Judge Getty entered a finding of three aggravated batteries. (TR. 157). Courts have vacated finding of guilt on aggravated battery when aggravated battery is alesser included offense of attempt murder. People v. Cam- acho, 389 N.E.2d. 1213. In Blockburger v. U.S., 284 U.S. 299, the U. S. Supreme Court held where the same act or transaction constitute a violation of two distinct statute, the test for determining whether there are two offenses or only one, is whether each statute requires proof of a fact which the other does not.

The role of the double jeopardy clause of the Fifth Amendment is to assure the Court does not exceed its legislative authority by imposing multiple punishment for the same offense.  In event that an attempt murder charge ultimately result in conviction and sentence, trial court is to vacate the sentence and conviction on the aggravated battery stemming from the same physical act. People v. Short, 377 N.E. 2d. 389.  Whether application of state law violates petitioner's double jeopardy rights is question of federal law reviewable under double jeopardy. Falcone v. Stewart, 120 F.3d. 1082.

Trial counsel was ineffective for failing to object to three aggravated battery conviction and for not placing this issue in his post trial motion. Strickland, 466 at 688.

The Appellate counsel on direct appeal was ineffective for her failure to include trial counsel's ineffectiveness of failing to object and raise the issue to preserve it for Appellate review.  Evitt v. Lucey, 469 U.S. 387.
This issue was waived for appellate review.  Illinois courts have consistently followed the holding that a defendant convicted of aggravated battery and attempt murder from the same physical act will have the aggravated battery vacated. People v. Byrant, 462 N.E. 2d. 780, 787.

Therefore, the petitioner move this Court to vacate all three aggravated battery convictions and find the trial and appellate counsels ineffective for their errors.

GROUND SEVEN

7. THE PETITIONER WAS DENIED A FAIR TRIAL UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS OF THE U.S CONSTITUTION BY THE TRIAL JUDGE'S BIAS, ANIMOSITY, AND UNPROFESSIONAL BEHAVIOR/ERRORS IN TRIAL AND BY TRIAL AND APPELLATE COUNSEL'S INEFFECTIVE ASSISTANCE IN NOT OBJECTING/ RAISING THIS ISSUE.

( The first paragraph from ground four is to be used as the first paragraph of this issue as the basis for ineffective assistance of both counsels and for space)

Judicial bias is a structural error that requires automatic reversal on federal habeas review if presumption of honesty and integrity is overcome. <u>Maurino v. Johnson</u>, 210 F.3d. 638; Jones v. Briley, 187 F. Supp. 2d. 993.  Petitioner has a constitutional right to an unbiased impartial judge. <u>Tumey v. Ohio</u>, 273 U.S. 510,523.  The petitioner was denied an impartial trial by Judge Getty's actions.

According to the Illinois Supreme court Rule 61, 62 and 63 states: (61) Judges should uphold the integrity and independence of judiciary activities; (62) Judges should avoid impropriety and appearance of impropriety in all activities; (63) Judges perform duties of judicial office impartially and diligently with patience, dignity, and courtesy to litigant.

Trial counsel did not raise or object to any issue of the trial judge's word, errors, or behaviors.  The Appellate counsel refused to place an issue of trial judge's bias, impartiality, animosity, or any thing in anyway.

The trial judge is presumed to know the law and apply it properly. <u>Lambrix v. Singletary</u>, 117 S.Ct. 1517, 520 U.S. 518.  The trial judge sould be an example of dignity and impartiality. <u>Liljeberg v. Health Service Corp.</u>, 480 U.S. 847.

The court can base its finding of bias or the appearance of bias by the due process clause. <u>Aetna Life Insurance Co. v. Lavoie</u>, 475 U. S. 813.  A criminal defendant tried by an partial judge is entitled to have his conviction set aside no matter how strong the evidence against him is. <u>Edward v. Balisok</u>, 117 S.Ct. 1584.  Judges should suppress their predilection and control their tempers and emotions and

and refrain from unnecessary disparagement of person or issues. <u>People v. Tyner</u>, 195 N.E.2d. 675.

The trial judge, ASA Bigoness, and my trial lawyer had two pre-trial conference in October and December 1988 where plea negotiations were given to the petitioner's counsel by both Judge Getty and ASA Bigoness. 50 years in October 1988 and 45 years in December 1988 were the offers given by Judge Getty for a guiltyor no contendre plea. (Exhibit C") The trial judge was in competition with other judges to see who could dispose of the most cases each year. Petitioner was punished for exercising his right to trial by 20 years with a 65 year sentence at bench trial. People v Sivel. 324 N.2.2d. 422 Judge Getty displayed a predisposition to extend the petitioner's sentence by way of extended or consecutive terms. People v Coleman, 481 N.E 2a. 33 Attempt murder and armed robbery carry 6 to 30 years. Most sentences are ran concurrent. The trial judge prejudge validity of petitioner's case prior to trial, which is impartiality and bias. Exhibit G "

Judge Getty's impartiality is exemplified when he states the 80% of defendants arrested are high off drugs, however he believed the petitioner was not high at arrest off drugs and alcohol, which is contrary to the evidence in the case.

Judge Getty made disparaging remarks, "You have these honors to tack onto the others" biting sarcasm and totally uncalled characterization of the conviction and sentence of this case as a honor in regards to petitioner stating his accomplishements before sentencing. This comment displays animosity and unprofessional judgement.

The trial judge said, "He won't be released a day too soon as far as I'm concern." This comment demonstrates a strong dislike for the petitioner, unforgiveness, and a strictly punishment mentality with animosity.

JUdge Getty said, " [this is] one of the most wantonly brutal and heinous cases that I had ever seen." The victim is not dead. Judge Getty had seen far worse case with multiple murders, rapes, and etc. Judge Getty exaggerated to justify his extended term and consecutive sentences, again displaying unreasonableness and animosity.

Judge Getty during the suppression hearing was heaving numerous sighs and moving around in his seat as if he was annoyed while petitioner testified. People v. Mays, 544 N.E. 2d. 1264.

Judge Getty called the petitioner a "totally reprehensible person" and "You choose a life of crime and drugs". Judge Getty has nothing to base these accusations with outside the case. The petitioner's life was ot characterized by crime. The petitioner had a clean record almost to age 25. The petitioner was not a bad person or morally bankrupt. Judge Getty was way out of line for calling the petitioner a "totally reprehensible person" without anything to back it up with excluding the crime.

Judge Getty impeached the petitioner with evidence that was not usable for impeachment. Judge Getty acted in a prosecutorial and adjudicatory manner violating due process. In Re Murchison, 349 U.S.

Petitioner was entitled to a fair, impartial trial judge who displayd a professional, respectful attitude with understanding and not a trial judge looking to find a way to exert revenge then cover it with baseless accusation smothered with extreme hostility.

Therefore, the petitioner moves this Court to find the trial judge bias, impartial, unprofessional, hostile, and with the combined impact of he trial judge's errors, that the petitioner received an unfair trial and that the trial and appellate counsel were ineffective for failing to raise this issue for a reverse and remand for a new trial or straight reversal. Also, the cumulative errors of the trial

and appellate counsel in grounds 4, 5, 6, and 7 require a new trial or
release from state custody and/or evidentiary hearing.

GROUND EIGHT

8. PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS UNDER THE FIFTH
, SIXTH, AND FOURTEENTH AMENDMENT UNDER THE UNDERLYING PRINCIPLES OF
APPRENDI, WASHINGTON, AND BOOKER

A. Petitioner's extended and consecutive sentences not proven
guilty beyond a reasonable doubt on all essential elements and was not
informed of all charges in indictment( fair notice)

On June 2, 1989, Judge Getty sentenced the petitioner to extended
term of 50 years for attempt murder and a consecutive term of 15 years
for armed robbery. On Nov. 2, 2000, the petitioner filed a second
post conviction stating that under New Jersey v. Apprendi, 530 U.S. 466,
The State failed to place in its indictment the element of "brutal and
heinous" standard and consecutive sentence provisions. and prove these
elements beyond a reasonable doubt. The State failed to give the peti-
tioner fair notice that he would be judged with the aggravating factors
/sentence enhancement of the brutal and heinous indicative of wanton
cruelty and consecutive sentence standards. The relevant fact finding
used by Judge Getty under a preponderance of evidence was never submit-
ted to a jury for a finding beyond a reasonable doubt. The trial
judge abused his discretion in sentencing and violated the petition-
er's constitutional rights under Apprendi, Blakely v. Washington, 124
S.Ct. 2531 (2004), and U.S. v. Booker, 160 L.Ed. 2d. 621 (2005).

Apprendi is not a new rule of law, but a refinement of pre-exist-
ing principles. Before Apprendi, the U.S.Supreme Court had made clear
that the Due Process Clause of the Fifth Amendment and the Jury guar-
antee of the Sixth Amendment required a jury finding on all essential

of an offense.  The fundamental importance of jury trials in criminal cases is well established. Id

The history of Apprendi shows that it has been the rule down centuries into the common law that a judge cannot give a higher sentence than based on the facts that the jury can determined. Harris v. United States, 2002 WL 521354 *11, Id at 477.

Apprendi broke no new ground and announced no new principle of constitutional law to need retroactive application to apply on collateral review.  Apprendi states tht state sentence enhancement provisions are to be treated as elements of a greater substantive offense when they expose the defendant to a greater punishment that authorized by the jury's guilty verdict.

The same constitutional principles in Apprendi were stated in Jones v. U.S., 119 S.Ct. 1215 (1999).  It is unconstitutional to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. Hamling v. U.S., 418 U.S. 87, 117.  The petitioner's extended term should be reduced to 30 years, the statutory max, or less because his rights under Jones and Hamling, were violated.

Because Apprendi'a holding effected a substantial change in Illinois law, and because, as a result of that substantial change, petitioner is serving a sentence for a crime for which he was never charged or convicted beyond a reasonable doubt, his sentence is void, and must be vacated.

InAlmendarez-Torres v. U.S., 118 S.Ct. 1219, 523 U.S. 244, the United States supreme Court held that an indictment must set forth each element of a crime charged.  The petitioner was never afforded due process of a fair warning to prepare for a trial of extended and

-25-

consecutive term provision. Exhibit F"

Apprendi's requirement that sentence enhancements that increase
the maximum penalty must be proven beyond a reasonable doubt applies
bcause it implicates fundamental fairness and accuracy of the criminal
proceedings.  The principles that guilt must be proved beyond a rea-
sonable doubt is implicit in the concept of liberty.  U.S. v. Salerno
481 U.S. 739, 763.  The petitioner accused of a crime is at a severe
disadvantage amounting to a lack of fundamental fairness since he has
been adjudicated guilty and imprisoned for 17 years on the strength
of the same evidence as would suffice in a civil case.  In Re Winship
, 397 U.S. 358, 363.  The right to have each element of an offense
proven beyond a reasonable doubt has been a central bastion of our
legl system's defense against erroneous conviction.

In People v. De La Paz, 791 N.E.2d. 489,490, the defendant had
been convicted of robbery and sentenced to extended term based on a
prior conviction and age of victim, which is totally different from
petitioner's extended term for "brutal and heinous standard.  IN De
La Paz, the Illinois Supreme Court limited its consideration of whet-
her Apprendi was a "watershed rule of criminal procedure", but did
not address whether any aspect of Apprendi had substantial effect on
Illinois sentencing schemes.

Therefore, for the foregoing reasons, the petitioner moves this
Court to vacate his sentence and reverse and remand for a new sentenc-
ing hearing or release the petitioner from state custody.

B. Under U.S v. Booker, 125 S.Ct. 738 (2005), the petitioner's
extended and consecutive sentences are void violating the petitioner's
constitutional rights under a retroactive application of Booker.

-26-

U.S. v. Booker, 125 S.Ct. 738 held sentencing guidelines under the Federal sentencing by Judge-determined facts by preponderance of evidence violated the Sixth Amendment right to jury trial. This is petitioner's initial habeas petition. Pre-Booker fact-finding process "seriously diminished" accuracy as to produce an impermissibly large risk of injustice. Schriro v. Summerlian, 124 S.Ct. 2519 (2004)  The Booker rule remedies this risk and is exempt from the Teague v. Lane retroactivity bar under the watershed rule of criminal procedure exception.  The failure to retroactively apply a substantial rule will necessarily carry a significant risk that the petitioner stands convicted of an act that the law does not make criminal and face a punishment that the law can not impose on him. Sulmmerlian, 124 S.Ct. at 2523.

Booker is also retroactive through: (1) it clarifies Congress' intent in light of the Sixth Amendment holding; (2) guideline clarifying amendments are retroactive; (3) remedially severing and exercising parts of the Federal sentencing Acts of 1984 to legislating; (4) Booker specifically declare both the Sixth Amendment holding and remedial interpretation of the Sentencing Act to all cases on direct review; (5) Booker is retroactive under Tyler v. Cain, 533 U.S. 656, 121 S.Ct. 2478 (2001) application retroactivity method; (6) Congress would have intended had it known its mandatory sentencing Guidelines violated the Sixth Amendment, the Supreme Court has necessarily made Booker retroactive.

For the foregoing reasons, the petitioner moves this Court to vacate the extended and consecutive senteces of his sentence to 30 years or reverse and remand for a new sentencing hearing.

EXHIBITS

WHEREFORE, for all the foregoing reasons stated in this entire write of habeas corpus petition, the petitioner pray that this Honorable Court grant this petition in any and all grounds which will require reverse and remand, reduce/modify the sentence. release petitioner form custody, or grant a new trial or evidentiary hearing . This petition is to be viewed liberally since the petitioner is a pro se prisoner with limited understanding of the law who received much assistance from other prisoners with this petition before the court.  Exhibit attached with reply.

Respectfully Submitted,

<u>Mr.</u>Tiberius Mays
Dixon Prison N-92625
2600 N. Brinton Ave.
Dixon, IL. 61021

Date:  July 4, 2005

Subscribed and Sworn to Before Me

This 7th Day of July, 2005

NOTARY PUBLIC

"OFFICIAL SEAL"
Sally A. Joos
Notary Public, State of Illinois
My Commission Exp. 07/12/2008

Exhibits

**CERMAK HEALTH SERVICES**
2800 S. California Ave   Chicago, Illinois 60608

# History & Physical Examination

| | | | | |
|---|---|---|---|---|
| *MAYS* | *Tiberius* | NOV 04 1987 | *620* | *8742447* |
| Last Name | First Name | Date | Location | I.D. Number |

*817 West Monroe    Chicago, Ill. 60607*
Address

| | | | | | |
|---|---|---|---|---|---|
| *12-12-60* | *26* | *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* | *M* | *Black* | |
| Birth Date | Age | Social Security No. | Sex | Race | Parent's Names |

---

**Medical History and Review of Systems**

| | | | | |
|---|---|---|---|---|
| 1. | Head injury | Yes ___ | No ✓ | |
| 2. | Eye problems | Yes ✓ | No ___ | |
| 3. | Ear, nose or throat trouble | Yes ___ | No ___ | |
| 4. | Sinusitis | Yes ___ | No ___ | |
| 5. | Mental problems (Institutional care) | Yes ___ | No ___ | |
| 6. | Asthma | Yes ✓ | No ___ | |
| 7. | Chest pain or pressure sensation | Yes ___ | No ___ | |
| 8. | Tuberculosis | Yes ___ | No ___ | |
| 9. | Heart trouble | Yes ___ | No ___ | |
| 10. | High or low blood pressure | Yes ___ | No ___ | |
| 11. | Hepatitis | Yes ___ | No ___ | |
| 12. | Hernia or rupture | Yes ___ | No ___ | |
| 13. | Operations | Yes ___ | No ___ | |
| 14. | Skin disease | Yes ___ | No ___ | |
| 15. | Broken bones | Yes ___ | No ___ | |
| 16. | Venereal disease | Yes ___ | No ___ | |
| 17. | Allergy to drugs, food etc. | Yes ___ | No ___ | |
| 18. | Diabetes Mellitus | Yes ___ | No ___ | |
| 19. | Seizure Disorders or Fits | Yes ___ | No ___ | |

**Remarks**

2. Glasses

6. U=K

ND=K

**Females Only**

| | | | | |
|---|---|---|---|---|
| 20. | Treated for female disorder | Yes ___ | No ___ | |
| 21. | Change in menstrual pattern | Yes ___ | No ___ | |
| 22. | Pregnancies | Yes ___ | No ___ | |

---

**Habits**

Alcohol *Yes*                    Tobacco *Yes*                    Drugs *G=K*

Methadone Maintenance *O*

**Family History**

Hypertension *O*          Heart Disease *O*          Diabetes M. *O*

Renal Dis. *O*          Tuberculosis *O*          Other

**Chief Complaint** *STB good*

History of the Present Illness

---

*( Exhibit "A" )*

26.

Height ___6___    Temp. __96.5__    Resp. ___18___

Weight __178__    Pulse ___80___    Blood Pressure __130/78__

N = Normal Findings
ND = Not Done
+ = Positive Findings
− = Negative Findings

| | | | | |
|---|---|---|---|---|
| **Appearance** | **Skin** | **Head** | **Eyes** | |
| Medium | Icterus ___ | Laceration ___ | Conjuctivae ___ | Pupils ___ |
| Obese | Turgor ___ | Hematoma ___ | Red ___ | Unequal ___ |
| Thin | Lesions ___ | Bleeding ___ | Pale ___ | Non-reactive ___ |
| Ambulatory/ | | Other Lesions ___ | Sclerae ___ | Other Lesions ___ |
| Bedridden | | | Icteric | |

| **Ears** | **Nose** | **Throat** | **Neck** | |
|---|---|---|---|---|
| Discharges ___ | Deviated ___ | Congested ___ | Stiff ___ | |
| Other Lesions ___ | Bleeding ___ | Tonsils ___ | Throid Enlargement ___ | |
| | Other Lesions ___ | Other Lesions ___ | Lymphadenopathies ___ | |
| | | | Mass | |

| **Chest** | **Heart** | **Abdomen** | **Extremeties** | |
|---|---|---|---|---|
| Breasts ___ | PMI ___ | Tender ___ | Edema ___ | |
| Discharge ___ | Murmur ___ | Hard ___ | Varicosities ___ | |
| Mass ___ | | Bowel Sounds ___ | Range of Motion ___ | |
| Other Lesions ___ | **Lungs** | Enlarged Liver ___ | | |
| | Rales ___ | Spleen ___ | | |

**Pelvis**
External _____

_____

_____

_____

_____

| **Internal** | **Lab Data** | |
|---|---|---|
| | VDRL ___ | |
| | PPD ___ | |
| Vagina ___ | PAP Smear ___ | |
| Cervix ___ | Other ___ | |
| Uterus ___ | | |
| Adnexae ___ | | |
| Lesions/ | | |
| Discharges ___ | | |

**Injuries and Identification Marks on Admission**

Mark with a numbered arrow
location of the following

1. Bruise
2. Cut
3. Swelling
4. Sore
5. Amputation
6. Bandage
7. Cast
8. Scar
9. Tattoo
10. Birthmark

Imprint Plate

(Exhibit "A")

_____
Patient's Signature

_____    11-4-87
Examiner's Signature:    Date:

Illinois Department of Corrections

*1992 Statistical Presentation*

*Table 21[1]*
## Average Sentence Imposed in Years for Determinate Cases by Selected Offenses
### 1983-1992

| Offense Class | Year | Cases | Average Mean | Average Median | Shortest Sentence | Longest Sentence |
|---|---|---|---|---|---|---|
| Murder | 1983 | 258 | 27.6 | 25.4 | 20.0 | 40.0 |
| | 1984 | 215 | 27.9 | 25.4 | 20.0 | 40.0 |
| | 1985 | 271 | 28.5 | 28.3 | 20.0 | 40.0 |
| | 1986 | 256 | 29.4 | 29.8 | 20.0 | 40.0 |
| | 1987 | 249 | 27.9 | 26.8 | 20.0 | 40.0 |
| | 1988 | 212 | 28.6 | 28.0 | 20.0 | 40.0 |
| | 1989 | 171 | 28.6 | 28.0 | 20.0 | 40.0 |
| | 1990 | 232 | 26.6 | 25.0 | 20.0 | 40.0 |
| | 1991 | 204 | 28.2 | 27.0 | 20.0 | 40.0 |
| | 1992 | 128 | 27.9 | 26.0 | 20.0 | 40.0 |
| First Degree Murder[2] | 1988 | 35 | 31.7 | 28.0 | 20.0 | 60.0 |
| | 1989 | 101 | 34.0 | 30.0 | 20.0 | 60.0 |
| | 1990 | 131 | 34.6 | 30.0 | 20.0 | 60.0 |
| | 1991 | 184 | 34.6 | 30.0 | 20.0 | 60.0 |
| | 1992 | 264 | 35.4 | 34.5 | 20.0 | 60.0 |
| Attempted Murder (Class X) | 1983 | 189 | 13.2 | 10.2 | 6.0 | 30.0 |
| | 1984 | 183 | 12.1 | 9.9 | 6.0 | 30.0 |
| | 1985 | 231 | 13.4 | 10.0 | 6.0 | 30.0 |
| | 1986 | 194 | 12.6 | 10.0 | 6.0 | 30.0 |
| | 1987 | 209 | 13.4 | 10.1 | 6.0 | 30.0 |
| | 1988 | 205 | 12.4 | 10.0 | 6.0 | 30.0 |
| | 1989 | 179 | 13.5 | 10.0 | 6.0 | 30.0 |
| | 1990 | 221 | 13.0 | 10.0 | 6.0 | 30.0 |
| | 1991 | 314 | 12.0 | 10.0 | 6.0 | 30.0 |
| | 1992 | 186 | 12.2 | 10.0 | 6.0 | 30.0 |
| Attempted First Degree Murder[2] (Class X) | 1988 | 23 | 15.3 | 12.0 | 6.0 | 30.0 |
| | 1989 | 45 | 12.6 | 10.0 | 6.0 | 30.0 |
| | 1990 | 70 | 14.4 | 11.5 | 6.0 | 30.0 |
| | 1991 | 93 | 14.2 | 12.0 | 6.0 | 30.0 |
| | 1992 | 248 | 13.3 | 10.0 | 6.0 | 30.0 |
| Aggravated Criminal Sexual Assault (Class X) | 1984 | 9 | 12.1 | 8.5 | 6.0 | 25.0 |
| | 1985 | 236 | 11.6 | 8.8 | 6.0 | 30.0 |
| | 1986 | 352 | 11.8 | 9.2 | 6.0 | 30.0 |
| | 1987 | 377 | 11.7 | 9.1 | 6.0 | 30.0 |
| | 1988 | 405 | 12.4 | 10.0 | 6.0 | 30.0 |
| | 1989 | 447 | 12.0 | 10.0 | 6.0 | 30.0 |
| | 1990 | 451 | 12.4 | 10.0 | 6.0 | 30.0 |
| | 1991 | 497 | 11.7 | 10.0 | 6.0 | 30.0 |
| | 1992 | 527 | 11.7 | 10.0 | 6.0 | 30.0 |

[1]Table 21 data do not reflect sentences that fall outside the range specified for each class. Extended terms and shortened sentences are reported in Table 25.

[2]Murder was changed to First Degree Murder, Attempted Murder was renamed Attempted First Degree Murder (also Class X), and Voluntary Manslaughter was changed to Second Degree Murder (also Class 1) effective July 1, 1987 (Public Act 84-1450).

(Exhibit "B")

### Table 25
#### Sentences Imposed for Determinate Cases by Offense Class Within and Outside of Sentence Limitations¹ 1978-1992

| Offense Class | Year | Total Cases | Number Within Range | Number out of Range | |
|---|---|---|---|---|---|
| | | | | Lower than Minimum | Extended |
| Murder/ First Degree Murder² | 1978 | 56 | 49 | — | 7 |
| | 1979 | 136 | 120 | — | 16 |
| | 1980 | 283 | 230 | — | 53 |
| | 1981 | 264 | 211 | — | 53 |
| | 1982 | 253 | 210 | — | 43 |
| | 1983 | 317 | 258 | 0 | 59 |
| | 1984 | 256 | 215 | 0 | 41 |
| | 1985 | 318 | 271 | 0 | 47 |
| | 1986 | 294 | 256 | 0 | 38 |
| | 1987 | 295 | 249 | 0 | 46 |
| | 1988 | 292 | 247 | 1 | 44 |
| | 1989 | 323 | 272 | 4 | 47 |
| | 1990 | 445 | 363 | 12 | 70 |
| | 1991 | 452 | 388 | 12 | 52 |
| | 1992 | 450 | 392 | 7 | 51 |
| Class X | 1978 | 1,095 | 1,003 | — | 92 |
| | 1979 | 1,648 | 1,502 | — | 146 |
| | 1980 | 2,111 | 1,966 | — | 145 |
| | 1981 | 1,989 | 1,830 | — | 159 |
| | 1982 | 2,056 | 1,926 | — | 130 |
| | 1983 | 2,290 | 2,143 | 49 | 98 |
| | 1984 | 2,082 | 1,947 | 39 | 96 |
| | 1985 | 2,348 | 2,208 | 26 | 114 |
| | 1986 | 2,279 | 2,142 | 46 | 91 |
| | 1987 | 2,411 | 2,278 | 31 | 102 |
| | 1988 | 2,471 | 2,323 | 65 | 83 |
| | 1989 | 3,143 | 2,929 | 95 | 119 |
| | 1990 | 3,487 | 3,270 | 144 | 73 |
| | 1991 | 4,030 | 3,831 | 115 | 84 |
| | 1992 | 4,543 | 4,353 | 96 | 94 |
| Class 1³ | 1978 | 191 | 165 | — | 26 |
| | 1979 | 337 | 283 | — | 54 |
| | 1980 | 373 | 311 | — | 62 |
| | 1981 | 428 | 373 | — | 55 |
| | 1982 | 712 | 684 | — | 28 |
| | 1983 | 1,914 | 1,796 | 78 | 40 |
| | 1984 | 1,981 | 1,863 | 77 | 41 |
| | 1985 | 2,191 | 2,090 | 62 | 39 |
| | 1986 | 1,955 | 1,852 | 57 | 46 |
| | 1987 | 2,084 | 1,984 | 62 | 38 |
| | 1988 | 2,325 | 2,141 | 125 | 59 |
| | 1989 | 2,851 | 2,644 | 148 | 59 |
| | 1990 | 3,421 | 3,042 | 332 | 47 |
| | 1991 | 4,034 | 3,527 | 430 | 77 |
| | 1992 | 4,576 | 4,110 | 395 | 71 |

¹Sentence limitations are outlined in the Unified Code of Corrections, Chapter 730, Illinois Compiled Statutes, Sections 5/5-5-3.1, 5/5-5-3.2, 5/5-8-1, and 5/5-8-2. Data for sentences which are less than the minimum are not available before 1983.

²Murder was changed to First Degree Murder effective on July 1, 1987 (Public Act 84-1450). The maximum sentence was increased from 40 years to 60 years and the extended term was lengthened from 80 years to 100 years. Beginning in 1988, First Degree Murder sentences are included in this category.

³ Voluntary Manslaughter was upgraded to a Class 1 offense in 1982. Residential Burglary was also introduced as a Class 1 offense in 1982. This change caused the sharp increase in the number of Class 1 cases.

(Exhibit "B")

98.897

Peo V. Mays

} No.  87CR - 15982
-

STATE OF ILLINOIS

COOK COUNTY

## AFFIDAVIT

1:  I John R. Deleon, attorney for Tiberius D. Mays, criminal circuit court trial before JUDGE MICHAEL GETTY in 1988-1989, swear under the penalty of perjury that the following information is true and -accurate to the best of my knowledge.

2:  I was hired as Tiberius D. Mays' attorney in __August__ , 1988 for case #87CR – 15982.  For repre- sentation for the charges of attempted murder, armed robbery and  3 aggravated battery .

3:  In October 1988, I along with Judge Getty and Assistant States' Attorney JIM BIGONESS, had a pre- trial  conference meeting in which the States' Attorney offered a plea negotiation of (50) fifty years to MR. MAYS.   MR. MAYS refused that offer.

4:  In December  1988, I again had another pre-trail conference meeting with Judge Getty and Assistant States' Attorney Jim Bigoness in which Judge Getty gave a final offer of (45) forty-five years to Mr. Mays  as a plea negotiation for guilty or no contest.  Mr. Tiberius D. Mays refused.

5:  Mr. Mays received  (65) sixty-five years total for a sentence of guilty on attempted murder. (50) fifty-years extended term,  (15) fifteen-years for armed robbery (runs consecutive to the (50) fifty-years), and aggravated  battery merged (no time given).

6:  This affiant  sayeth nothing further.    Respectfully;

ATTY. NAME: _John R DeLeon_

ADDRESS:  53 WEST JACKSON BLVD.

CITY:     CHICAGO, ILLINOIS 60604

NOTARY PUBLIC SEAL:  SUBSCRIBED AND SWORN TO BEFORE ME THIS 9TH DAY OF AUG. 1999.

> OFFICIAL SEAL
> DONNA MAKOWSKI
> NOTARY PUBLIC STATE OF ILLINOIS
> MY COMMISSION EXP. MAR. 5 2002

Exhibit "C"

```
STATE OF ILLINOIS      )
                       )    SS
COUNTY OF LEE          )
```

## AFFIDAVIT

I, Tiberius Mays, N-92625, Pro Se, duly sworn upon oath, depose and state:

1. I am the petitioner in the federal habeas corpus case 02-5167; that I have read the enclosed Reply to the Attorney General's Answer; signed the Reply, and state the information in the Reply is true and accurate in substance and fact.

2. The affiant/petitioner is presently incarcerated at Dixon Prison, which is on lockdown as of July 5-6, 2005.

3. The affiant has informed Asst Warden Transcoco, Lieutenant T. Gardner_____, and C/O Farmer about his July 7 deadline and need to enter his legal excess box for documents need for the presentation of this writ of habes corpus. on July 6 in the morning.

4. On Nov. 4, 1987, the affiant spoke to Asst. State's Attorney Eve Clay by himself when she first came to question me about the arrest and crime.

5. I asked to use the phone at least three times with different chicago police officers on Nov. 4, 1987, while in custody.

6. I was beaten by Chicago Police officers on three different occasions on Nov. 4, 1987: once at initial arrest, and twice by Detective Jaglowski with another officer holding me at the Grand/Central Area.

7. I informed Detective Jaglowski on Nov. 4, 1987, about being hit in the stomach four times at least upon my initial arrest in the vacant apartment where I was found.

8. Detective Jaglowski told me that he would keep those officers off of me if I cooperated with him on Nov. 4, 1987, when he first spoke to me at the scene of the crime.

-1-

"Exhibit D"

9. The affiant was hit repeatedly in his stomach and upper legs by Det. Jaglowski at Area Five Chicago Police station before he saw Asst. State's attorney Eva Clay for the first time on Nov. 4, 1987.

10. The affiant after talking to ASA Clay the first time by himself was again beaten by Detective Jaglowski while another officer held him as I had one arm handcuffed against a wall at Area Five Police station on Grand and Central Ave on Nov. 4, 1987.

11. The affiant told the paramedic at the Cook County Health & Physical Examination on Nov. 4, 1987, that police officer had on three occasion hit him repeatedly in the stomach and leg areas.

12. The affiant put in to see a doctor about stomach and leg pain while in the Cook County jail several days right after being placed in Division Six, 2Q, but I was never seen by a doctor.

13. The affiant sayeth nothing further.

_____
Tiberius Mays N-92625

Subscribed and Sworn to before me
this 7th day of July, 2005.

_____
Notary Public

"OFFICIAL SEAL"
Sally A. Joos
Notary Public, State of Illinois
My Commission Exp. 07/12/2008

-2-

✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳

STATE OF ILLINOIS )
                  ) SS.
COUNTY OF COOK    )

The November, 1987 Grand Jury of the

Circuit Court of Cook County.

The Grand Jurors chosen, selected, and sworn, in and for the County
of Cook, in the State of Illinois, in the name and by the authority of
the People of the State of Illinois, upon their oaths present that on
or about NOVEMBER 4, 1987 at and within the County of Cook

TIBERIUS MAYO

committed the offense of     ATTEMPT FIRST DEGREE MURDER

in that    HE, WITHOUT LAWFUL JUSTIFICATION WITH INTENT TO COMMIT

THE OFFENSE OF FIRST DEGREE MURDER, INTENTIONALLY AND

KNOWINGLY ATTEMPTED TO KILL JOHN SARNECKI BY

BEATING HIM WITH A PIPE,

IN VIOLATION OF CHAPTER 38, SECTION 8-4/(38-9-1)

OF THE ILLINOIS REVISED STATUTES 1985, AS AMENDED, AND

Contrary to the Statute, and against the peace and dignity of the same
People of the State of Illinois.

Charge ID Code: 1547

"Exhibit F"

### AFFIDAVIT

I, Tiberius Mays, first being duly sworn under oath depose and state the the following:

1. Tom M. Power, public defender at Cook County Criminal Division, was my attorney at the beginning of my case No 87 CR 15982 for which this federal habeas corpus petition is hearing.

2. While Tom M. Power, Public defender, was my attorney prior to Attorney John R. DeLeon taking over the case, Public Defender T. Power told me specifically on several occasion in May 1988 that the State's Attorney's Office was talking to him about a 12 to 15 year plea, however it was not official.

3. After John DeLeon became my attorney, the unoffical plea of 15 years went to 50 in October 1988.

4. At sentencing, I received 65 years for the same crime that the State was unofficially talking 12 to 15 years.

5. The affiant sayeth nothing further.

_Tiberius Mays_
Tiberius Mays N-92625

Subscribed and Sworn To Before Me

This 7th day of July, 2005.

_Sally A. Joos_
NOTARY PUBLIC

"OFFICIAL SEAL"
Sally A. Joos
Notary Public, State of Illinois
My Commission Exp. 07/12/2008

"Exhibit 6"

STATE OF ILLINOIS)
COUNTY OF C O O K) SS.


A F F I D A V I T


I, Tom Power, first being duly sworn under oath depose and state the following:

That I represented Tyberius Mays at the beginning of his case.

That while I was his attorney, Public Defender's Office, and prior to Attorney DeLeon stepping in on the case, there was never any formal, definite offer mentioned with regard to Tyberius Mays receiving 12-15 year plea from the State's Attorneys Office.

Affiant sayeth not.

*Thomas M. Power*

Tom Power
Public Defender's Office
2650 S. California
8th Floor
Chicago, IL 60608


Subscribed and Sworn to Before
Me This _8_ Day of July, 1991
_____
Notary Public
Commission Expires: _4-19-95_

```
" OFFICIAL  SEAL "
  MORTIMER SMITH
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4/19/95
```

`` Exhibit H ``

STATE OF ILLINOIS    )
                     )  SS.
COUNTY OF WILL       )
                     )

## AFFIDAVIT

I, Tiberius Mays N-92625, Pro Se, being first duly sworn on oath, depose and state that the following information is true and accurate to the best of my knowledge and belief.

1. On November 4, 1987, at Area Five Police station on Grand Ave. in Chicago, Illinois, Assistant State's Attorney Eva Clay came to interview me about the beating of John Sarnecki.

2. On the same date, Nov. 4, 1987, ASA Eva Clay started to question me about the particulars of the case I am now appealing concerning the attempt murder and armed robbery of John Sarnecki.

3. After talking to ASA Clay for a minute, I asked her if she was my public defender.

4. ASA Clay said to me that she was not my public defender

5. When I asked ASA Clay if she would get me a public defender, ASA Clay told me that it would be unethical for her to get me a public defender.

6. I told ASA Clay that I had nothing to talk to her about and she left.

7. This affiant sayeth nothing further

*Tiberius Mays*

Tiberius Mays N-92625
P.O. Box 112
Joliet, IL. 60434-0112

SUBSCRIBE AND SWORN TO BEFORE ME

ON JULY 14, 1999.

*[signature]*

NOTARY PUBLIC

"OFFICIAL SEAL"
SANDRA SCHWAB
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXPIRES 1-5-2001

Exhibit One

```
STATE OF ILLINOIS    )
                     )  SS.
COUNTY OF WILL       )
                     )
```

## AFFIDAVIT

I, Tiberius Mays N-92625, Pro Se, being first duly sworn on oath, depose and state that the following information is true and accurate to the best of my knowledge and belief.

1. In October 1988 and in December 1988, my attorney, John DeLeon, Assistant State's Attorney James Bigoness and Judge Michael Getty in the judge's chambers in the circuit court of cook county-criminal division had pre-trial conferences to discuss the issues of the case and etc.

2. My attorney, Mr. DeLeon, in October 1988, after the first pre-trial conference, told me that the ASA J. Bigoness offered him fifty (50) years as a plea negotiation for a guilty or no contest plea.

3. My attorney, Mr. Deleon, in December 1988, after the second pre-trial conference told me that ASA Bigoness offered forty-seven (47) years as a plea negotiation for a guilty or no contest plea.

4. Judge M. Getty told my attorney that since judges like to compete in having the most cases disposed of, Attorney DeLeon told me that and said that Judge Getty offered forty-five years (45) as a final plea negotiation to me through my attorney.

5. I did not accept either offer by the Judge and Asst. State's Attorney and alluded to the offers when given a chance to speak before sentencing.

6. I have asked my trial attorney to send me an affidavit concerning the facts that I have stated in this affidavit and at this time, Mr. DeLeon has not responded.

7. This affiant sayeth nothing further.

_Tiberius Mays_
Tiberius Mays, Pro Se

SUBSCRIBE AND SWORN TO BEFORE ME
ON JULY 14, 1999.

_[signature]_

```
"OFFICIAL SEAL"
SANDRA SCHWAB
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12/8/20__
```

"Exhibit Two (2)"

STATE OF ILLINOIS )
                  ) SS
COUNTY OF COOK    )

F I L E D

MAY 1 1988

MORGAN M. FINLEY
CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT-CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS )
                                 )
                    Plaintiff,   )
                                 )
          -vs-                   )    Indictment No.  87-CR-15982
                                 )
     TIBERIUS MAYS               )
                                 )
                    Defendant.   )

MOTION TO SUPPRESS STATEMENTS

Now comes the defendant and his attorney, RANDOLPH N. STONE, Public Defender
of Cook County, by     THOMAS M. POWER          , Assistant Public Defender,
and moves this Honorable Court to suppress as evidence herein any and all
oral or written communications, confessions, statements, or admissions,
whether inculpatory or exculpatory, made by the defendant prior to, at the
time of, or subsequent to his arrest in the above-entitled cause.

In support of this motion, the defendant states as follows:

1.  That the defendant was arrested on  November 4, 1987      in the
vicinity of  542 N. Pine, Chicago, Illinois.

2.  That at relevent times the defendant was interrogated by law
enforcement officials or a person or persons acting on their behalf.

3.  That prior to such interrogation the defendant was not:

     a.  Informed that he had a right to remain silent;

     b.  Informed that anything he might say or do could be
         used against him in court;

     c.  Informed that he had a right to consult with a
         lawyer;

     d.  Informed that he had a right to have a lawyer
         present with him during the interrogation;

"Exhibit E"

3.

-2-

    e.  Informed that, if he was indigent, he would none-
       theless be provided with a lawyer by the State to
       be present during his interrogation.

4. That due to the physical, physiological, mental, educational, emotional and/or psychological state, capacity and condition of the defendant, he was incapable and unable to appreciate and understand the full meaning of his Miranda rights and any statement was therefore not the free and rational choice of the accused and was not made voluntarily, knowingly and intelligently.

5. That the statements sought to be suppressed were obtained as a result of interrogation which continued after the defendant had elected to remain silent and/or had elected to consult with an attorney prior to further questioning.

6. That the statements sought to be suppressed were obtained as a result of physical coercion illegally directed against the defendant, to wit: the defendant was struck 3 or 4 times in the stomach, and that such statements were, therefore, involuntary.

7. That the statements sought to be suppressed were obtained as a result of further threatened physical force, therefore, involuntary.

8. That the assistant state's attorney was on notice of the involuntary nature of the defendant's statement in a court reported statement taken by Assistant State's Attorney, Evelyn B. Clay. The defendant did inform Ms. Clay that he was beaten by police officers, and the State's Attorney was therefore on notice that his statements were not voluntary. (Page 12 of the Court Reported statement. See attached exhibit).

9. That Assistant State's Attorney Ms. Clay totally ignored the defendant's statement, and that such statements were therefore taken with the knowledge that they were involuntary.

"Exhibit E"

-3-

10. That the statements sought to be suppressed were obtained as a result of physical coercion illegally directed against the defendant and that such statements were, therefore, involuntary.

11. That the statements sought to be suppressed were obtained as a result of phychological and mental coercion illegally directed against the defendant and that such statements were, therefore, involuntary.

12. That the statements sought to be suppressed were obtained as the product of and as the result of confronting the accused with certain evidence which has been obtained in derogation of the defendant's Fourth Amendment protection against illegal search and seizure.

13. That the statements sought to be suppressed were obtained as the product of and as the direct and proximate result of confronting the accused with certain material misrepresentations.

14. Therefore, that any and all communications, confessions, statements, admissions, or tests executed by the defendant were elicited in violation of his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and the Constitution of the State of Illinois.

WHEREFORE, the defendant prays:

1. That the Court conduct a pretrial hearing to determine if the nature of such statements were voluntary, and;

2. That this Court suppress as evidence herein any and all communications, confessions, statements, actions, admissions, or tests, inculpatory or exculpatory, written or oral, made by him the time of and/or subsequent to his being taken into custody.

RANDOLPH N. STONE
Public Defender of Cook County

*Exhibit "E"*

BY:  THOMAS M. POWER
Assistant Public Defender 30295

<u>NOTICE OF FILING</u>

To: Illinois Attorney General
    100 West Randolph St., 12th Floor
    Chicago, Illinois 60601

    PLEASE BE ADVISED that on July 7, 2005, while on lockdown, I
caused the attached REPLY to be filed with the clerk of the United
States District Court for the Northern District of Illinois with One
original and two copies.

                                  BY _____
                                       Tiberius Mays, Pro Se


<u>CERTIFICATE OF SERVICE</u>

    I, Tiberius Mays, certify under oath that the attached <u>REPLY</u> was
served upon the following on July 7, 2005, by depositing a copy in the
Unit 26 officer's hand while on lockdown at Dixon prison in Dixon,
Illinois, in an envelope with a legal postage.upon:

                            Illinois Attorney General
                            100 West Randolph St., 12th Floor
                            Chicago, IL. 60601

                            _____
                            Tiberius Mays, N-92625
                            Dixon Prison  2600 N. Brinton AVE
                            Dixon, IL. 61021

Subscribed and Sworn to before me
this _7th_ day of _July_, 20_05_.
_____
        Notary Public

"...CIAL SEAL"
Sally A. Joos
Notary Public, State of Illinois
My Commission Exp. 07/12/2008