**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

UNITED STATES ex rel. TIBERIUS D.   )
MAYS (#N92625),                     )
                                    )
            Petitioner,             )
                                    )    Case No. 02 C 5167
       v.                           )
                                    )
NEDRA CHANDLER,[1] Warden Dixon     )
Correctional Center,                )
                                    )
            Respondent.             )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is *pro se* Petitioner Tiberius Mays' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1).  For the reasons discussed below, the Court denies Mays' habeas petition.

## BACKGROUND

Mays does not set forth clear and convincing evidence challenging the statement of facts in the Illinois Appellate Court opinions affirming the judgments of the Circuit Court of Cook County.  As such, the Court presumes the Illinois Appellate Court's facts are correct for purposes of Mays' habeas petition.  *See* 28 U.S.C. § 2254(e)(1); *Barrow v. Uchtman*, 398 F.3d 597, 603 (7th Cir. 2005).  The Court, therefore, adopts the underlying facts set forth by the Illinois Appellate Court, First Judicial District, in Mays' direct and post-conviction appeals.  *See*

---

[1]  Nedra Chandler is currently the Warden at Dixon Correctional Center and is thus the proper Respondent in this habeas action.  *See* Rule 2(a) of the Rules Governing Habeas Corpus Cases under 28 U.S.C. § 2254.  The Court, therefore, substitutes Chandler as the Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

*People v. Mays*, 230 Ill.App.3d 748, 172 Ill.Dec. 418, 595 N.E.2d 1088 (Ill.App.Ct. 1992);

*People v. Mays,* No. 1-98-0897 (1st Dist. Oct. 12, 1999) (unpublished order); *People v. Mays,*

No. 1-01-1067 (1st Dist. Oct. 19, 2001) (unpublished order).

## I.     Trial Evidence

### A.     Mays' Post-Arrest Statement

On November 4, 1987, Mays beat the victim, John Sarnicki, with a metal pipe until he

was unconscious and then took Sarnicki's wallet.  Following his arrest, Mays gave a court

reported statement at the police station.  In his statement, Mays said that while he was walking

on a street in Chicago, he saw a city tow truck.  After the tow truck driver exited the truck and

refused Mays' offer to help, Mays struck him on the head with a 15 to 16 inch metal pipe.  When

the tow truck driver – Sarnicki –  fell to the ground face-up, Mays hit him twice in the head and

mouth, turned him over, and removed his wallet.  Mays fled the scene and threw the pipe in

some water.

Shortly thereafter, Mays went to an empty apartment where he tried to stuff Sarnicki's

wallet in a toilet.  He hid Sarnicki's credit cards under a radiator.  Mays then threw his blood-

stained sweater in the apartment stairwell and fell asleep.  Two officers entered the apartment,

woke him up, asked him his name, and hit him when he denied involvement in the Sarnicki

beating.  After one officer retrieved the wallet from the toilet, Mays showed them where he hid

the credit cards.  Mays then agreed to return to the scene of the beating with the officers.  He also

stated that the assistant State's Attorney and the police detectives treated him fairly and allowed

him to use the telephone.

## B. Motion to Suppress Hearing

For purposes of Mays' bench trial, the parties stipulated to all of the testimony given at the motion to suppress hearing.

### 1. Mays' Testimony

Mays filed a motion to suppress his post-arrest statement. He testified at the motion to suppress hearing and by way of stipulation at trial. Specifically, Mays testified that when the police arrived at the vacant apartment at about 2:00 a.m., he was "very intoxicated" and "very groggy." Between 11:00 p.m. and midnight, he drank two one-half pints of gin, smoked marijuana, and took cocaine. Mays further testified that after the officers learned his name, they kicked him, and hit him in the stomach after they searched the apartment. Mays also stated that the officers threatened "to do this and that" if he did not cooperate with them.

Mays testified that he spoke with Detective Allen Jaglowski at the police station. When Mays denied any involvement in the Sarnicki beating, Mays testified that Detective Jaglowski hit him in the stomach three or four times and threatened to continue if Mays did not cooperate. Mays further testified that he requested a public defender several times, but the officers refused to get him an attorney. He also stated that Detective Jaglowski did not read him his rights.

In addition, Mays testified that when the assistant State's Attorney Evelyn Clay arrived, he asked for an attorney and to use the telephone. Mays testified that Clay refused to get him an attorney and left when Mays stopped talking to her. Clay returned a few hours later with a court reporter. Mays testified that he told Clay that the police had hit him and that she cut him off when he made this statement. Also, Mays claimed that he was "very high," "groggy," and "somewhat tired" when he gave his post-arrest statement.

On cross-examination, Mays admitted that he told Clay he was treated fairly and was allowed to use the telephone. He claimed that he told a paramedic about his stomach pains when he first arrived at the Cook County Jail, but that the paramedic found "nothing real bad." Mays further testified that he requested a doctor "30 to 40" times, but no one treated him for stomach injuries.

### 2. Lonnie Williams' Testimony

Lonnie Williams, a hotel switchboard operator, testified that Mays entered the hotel at about 1:30 a.m. on the night of Sarnicki's beating. Mays, whom Williams had known for several years, was "tipsy, smelling of marijuana and beer." About one hour later, a man entered the hotel and said, "Look at this guy beating up on this tow truck driver." Williams went outside and saw Mays across the street with a crowbar in his left hand several feet from a person lying on the ground. Williams saw Mays walk across the lot, pick up a piece of paper, and wipe off the crowbar. Williams then telephoned the police. When the police arrived, Mays was gone. Williams, however, gave them Mays' name.

### 3. Darnell Jackson Stipulation

By way of stipulation, Darnell Jackson stated that around 2:40 a.m. on the morning of the Sarnicki beating, he and a friend were walking and saw a city tow truck. Next to the truck they saw the victim on his back bleeding from his head. Jackson used the truck's radio to call an ambulance and waited several minutes until the police arrived.

### 4. Chicago Police Officers' Testimony

Officers Michael Decker and Edward Dolan of the Chicago Police Department also testified. When they arrived at the scene of the beating, they saw Sarnicki lying on the ground

next to the tow truck.  Sarnicki could not respond to their questions and was taken by ambulance to the hospital.  The officers also spoke with Williams who gave them Mays' name.  They further testified that they talked to Larry Parker, a hotel resident, who took them to the apartment of Doris Mays, Tiberius Mays' sister.  Doris directed the officers to a vacant apartment in her building where Mays sometimes slept.

The officers proceeded to the apartment, found Mays sleeping on the floor near the open door, woke him up, and arrested him.  The officers read him his rights which he stated that he understood.  Officer Dolan found a wallet inside the toilet which contained a slip of paper with a City of Chicago tow pound number on it.  Mays told the officers that he "got the wallet from the tow driver on Lake Street."  Mays further stated that he hit Sarnicki over the head with a pipe.  He then showed the officers a radiator under which he hid the remaining contents of Sarnicki's wallet.  Also, Mays returned to the scene of the beating with the officers and led them to the pipe.  Both Officers Dolan and Decker testified that they did not strike or threaten Mays during their encounter with him.  Officer Dolan described Mays as "somewhat calm. Very articulate. Not very excitable. He was fine."  The officers also testified that Mays did not appear drunk, nor did he tell the officers that he was tired or drunk.

Detective Jaglowski testified that he spoke with Mays at the scene of the beating around 6:00 a.m. and later that morning at the police station.  Mays told Detective Jaglowski that he was walking down the street and tried to engage the tow truck driver in conversation.  When the driver did not respond, Mays beat him with a dumbbell handle and took the driver's wallet from his pocket.  Mays later identified the wallet, credit cards, and dumbbell handle.  Detective Jaglowski testified that neither he, nor any other officer hit or threatened to hit Mays if he did not

cooperate. Detective Jaglowski also testified that Mays did not tell him of any mistreatment or stomach pains. Further, Detective Jaglowski stated that Mays spoke with assistant State's Attorney Clay for several hours in his presence and that Mays eventually gave his post-arrest statement. Clay did not testify, but the parties stipulated that Clay did not question Mays about his claim of police mistreatment.

### 5. Dr. John Shea's Stipulation

By stipulation, the State introduced the testimony of Dr. John Shea, a neurosurgeon at McGaw Hospital. The stipulation established that Dr. Shea would testify that Sarnicki was not breathing when he arrived at the hospital. Sarnicki had four large lacerations on his head and was not expected to survive. Dr. Shea performed a life-saving operation, removing 25 percent of Sarnicki's brain which had been damaged. Sarnicki remained in a coma for eight days and was hospitalized for six months. As a result of his injuries, Sarnicki is unable to speak, is deaf in one ear, and has limited vision.

## II. Trial Court's Findings

The trial court denied Mays' motion to suppress, finding that Mays intentionally attempted to ruin his post-arrest statement by claiming police brutality. Also, the trial court concluded that Mays was not intoxicated at the time of the beating, although there was evidence of substance abuse in his past. The trial court then found Mays guilty of attempted first degree murder, armed robbery, and three counts of aggravated battery. Subsequently, the trial court concluded that Mays was eligible for an extended sentence and a consecutive term. He then sentenced Mays to a 50-year term for the attempted murder charge and a consecutive 15-year term for armed robbery.

## III. Procedural Background

Mays appealed his conviction and sentence raising the following arguments on direct appeal: (1) he was denied his right to due process when assistant State's Attorney Clay "turned a deaf ear" to his statement that the officers hit him; (2) there was insufficient evidence to support his attempted murder conviction; (3) the surrounding circumstances of the beating show that the blows to the victim's head do not permit an inference of the intent to kill; (4) the State improperly impeached him; (5) the trial court erred in sentencing him to consecutive sentences; (6) his conduct was not exceptionally "brutal or heinous" under Illinois law as to impose an extended term sentence; (7) the trial court erred by considering his drug abuse to be an aggravating factor at sentencing; and (8) the trial court abused its discretion by not giving Mays' rehabilitative potential consideration at sentencing. (R. 20-1, Respondent's Rule 5 Exhibits, Ex. D.) On April 3, 1992, the Illinois Appellate Court affirmed Mays' conviction and sentence. (Ex. C.)

Mays then filed a Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court. In his PLA, Mays argued: (1) the appellate court misapprehended Illinois precedent concerning conduct that is "exceptionally brutal or heinous and indicative of wanton cruelty;" (2) he was denied due process when assistant State's Attorney Clay "turned a deaf ear" to his statement that the officers hit him; and (3) the appellate court erred by overlooking the necessity of determining that there were two criminal acts under the Illinois "one act one crime" rule. (Ex. E.) The Illinois Supreme Court denied Mays' PLA on October 7, 1992. (Ex. F.)

On March 26, 1993, Mays filed his first petition for post-conviction relief with the Circuit Court of Cook County. (Ex. G.) In his petition, Mays argued: (1) he was denied due

process and a fair trial when he was improperly impeached at his suppression hearing; (2) he was denied due process and a fair trial because of judicial bias; (3) he was denied constitutionally effective assistance of trial and appellate counsel; (4) he was denied due process when the State did not comply with Illinois' material witness rule; (5) he was denied due process by being convicted of both attempted murder and aggravated battery – a lesser included offense of attempted murder; (6) he was denied due process and his right to counsel during the custodial interrogation by the police that led to his confession; (7) he was denied due process when the arresting detective falsified information to the grand jury; and (8) he was denied due process by the police officers' coercive actions.  (Ex. G.)

On February 18, 1997, the Circuit Court appointed counsel for Mays.  Mays' attorney subsequently filed a supplemental petition for post-conviction relief.  (Ex. H.)  In that petition, Mays argued one new issue – that his convictions for aggravated battery should be vacated regardless of the fact that no sentence was imposed because aggravated battery is a lesser included offense of attempted murder.  (Ex. H.)

On March 4, 1998, the Circuit Court of Cook County denied Mays' first post-conviction petition.  (Ex. B.)  Mays appealed, but his counsel filed a petition to withdraw pursuant to *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987).  Mays then filed a response to the *Finley* motion arguing the same issues that he raised in his *pro se* post-conviction petition.  (Ex. U.)  On October 12, 1999, the Illinois Appellate Court allowed counsel to withdraw and affirmed the judgment of the post-conviction Circuit Court.  (Ex. I.)

On March 21, 2000, Mays filed a PLA to the Illinois Supreme Court arguing:  (1) ineffective assistance of trial and appellate counsel because they failed to object to a violation of

the material witness rule; (2) ineffective assistance of trial and appellate counsel because they failed to object to his improper impeachment; (3) ineffective assistance of trial and appellate counsel because they failed to object to his aggravated battery convictions; (4) judicial bias and ineffective assistance of trial and appellate counsel in failing to object to judicial bias. (Ex. J.) On June 22, 2000, the Illinois Supreme Court denied Mays' PLA. (Ex. K.)

On October 30, 2000, Mays filed a second Illinois post-conviction petition. (Ex. L.) In that petition, Mays raised a single claim arguing that his sentence was unconstitutional under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). (Ex. L.) On January 29, 2001, the Circuit Court of Cook County dismissed the petition because the court could not apply *Apprendi* retroactively. (Ex. M.) The Illinois Appellate Court affirmed the Circuit Court's decision. (Ex. M.) Mays then filed a PLA that the Illinois Supreme Court denied on May 30, 2002. (Ex. Q.)

Before the Court is Mays' petition for habeas corpus relief pursuant to 28 U.S.C. § 2254(d)(1). Construing his *pro se* habeas petition liberally, *see Perruquet v. Briley,* 390 F.3d 505, 512 (7th Cir. 2004), Mays presents the following habeas claims: (1) his due process rights were violated when the assistant State's Attorney deliberately ignored his allegation of police brutality while taking his statement; (2) his conduct was not exceptionally "brutal or heinous" under Illinois precedent; (3) the appellate court failed to properly apply the Illinois "one act one crime" rule; (4) ineffective assistance of trial and appellate counsel because they violated the "material witness rule;" (5) ineffective assistance of trial and appellate counsel because they failed to object to his improper impeachment; (6) ineffective assistance of trial and appellate counsel because they failed to object to his aggravated battery convictions; (7) he was denied a

fair trial because of judicial bias and both trial and appellate counsel were ineffective for failing

to object to judicial bias; and (8) his sentence was unconstitutional under *Apprendi.*

<u>**LEGAL STANDARDS**</u>

**I.      Habeas Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas

relief cannot be granted unless the state court's decision was (1) contrary to, or an unreasonable

application of law clearly established by the Supreme or (2) was "based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."

*Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005) (citing 28 U.S.C. § 2254(d)(1-2)); *see also*

*Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  In *Williams*,

the Supreme Court explained that a state court's decision is "contrary to" clearly established

Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law" or "if the state court confronts facts that are materially

indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to

ours."  *Id.* at 405; *see also Brown v. Payton,* ___U.S.___, 125 S.Ct. 1432, 1438-39, 161 L.Ed.2d

334 (2005).

Under the "unreasonable application" prong, a habeas petitioner must demonstrate that

although the state court identified the correct legal rule, it unreasonably applied the controlling

law to the facts of the case.  *See Williams*, 529 U.S. at 407.  "This reasonableness determination

is quite deferential, such that a state decision may stand as long as it is objectively reasonable,

even if the reviewing court determines it to be substantively incorrect."  *Barrow,* 398 F.3d at

602; *see also Lockyer v. Andrade,* 538 U.S. 63, 76, 123 S.Ct. 1166, 1174, 155 L.Ed.2d 144

(2003) (unreasonable application more than an incorrect or erroneous decision). To be considered "unreasonable" under this standard, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir. 2002); *see also Hubanks v. Frank*, 392 F.3d 926, 929 (7th Cir. 2004) (state court decision must be minimally consistent with facts and circumstances of case or one of several equally plausible outcomes).

## II.    Procedural Default

Before bringing a habeas claim in federal court, a petitioner must exhaust all remedies available to him in state court. *Bintz v. Bertrand,* 403 F.3d 859, 863 (7th Cir. 2005). In other words, the "petitioner must establish that he fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge." *Id.*; *see also O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Fair presentment requires a petitioner to set forth the operative facts and controlling legal principles for each claim. *Bintz,* 403 F.3d at 863. "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Lewis v. Sternes,* 390 F.3d 1019, 1026 (7th Cir. 2004). In addition, a habeas claim is procedurally defaulted when the state court did not address the petitioner's federal claim because the petitioner failed to meet independent and adequate state procedural requirements. *Stewart v. Smith,* 536 U.S. 856, 860-61, 122 S.Ct. 2578, 2581, 153 L.Ed.2d 762 (2002); *see also Coleman v. Thompson,* 501 U.S. 729, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).

A petitioner may overcome procedural default by demonstrating cause for the default and

actual prejudice as a result of the alleged violation of federal law or by showing that failure to

consider the claims will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at

750. A fundamental miscarriage of justice occurs when a petitioner can establish that "a

constitutional violation has probably resulted in the conviction of one who is actually innocent."

*Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

<u>ANALYSIS</u>

## I.       **Claim 1   – Due Process Violation/Prosecutorial Misconduct**

First, Mays contends that assistant State's Attorney Clay, who took his post-arrest

statement, violated his right to due process because she failed to investigate his claim that the

police hit him. Specifically, while giving his statement, Mays told Clay that the police officers

hit him a couple of times. Clay did not respond to Mays' assertion. As such, Mays contends that

Clay's inaction constitutes prosecutorial misconduct amounting to the denial of his right to due

process.

On direct appeal, the Illinois Appellate Court considered this claim as part of its review

of the voluntariness of Mays' confession. The Court determine that when Clay interviewed

Mays:

> Defendant did not complain of police mistreatment, except for the isolated
> reference, nor appear to be injured or in physical discomfort. Defendant
> responded affirmatively when asked if the detectives and the assistant State's
> Attorney treated him well. We cannot say that Clay's failure to investigate
> defendant's allegation that the police hit him, in light of the other contradictory
> evidence, constituted a denial of due process.

*People v. Mays*, 230 Ill.App.3d 748, 755, 172 Ill.Dec. 418, 595 N.E.2d 1088 (Ill.App.Ct. 1992).

The "other contradictory evidence" includes the police officers' testimony denying involvement

in or knowledge of Mays' allegation of police brutality. *Id.* Accordingly, the Illinois court

concluded that Clay did not violate any ethical or professional duties by not investigating Mays' claim that the police hit him. *Id.*

In evaluating a claim of prosecutorial misconduct, the relevant inquiry is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).[2] Here, the Illinois court concluded that Clay's conduct did not violate an ethical or professional duty, and thus Clay's failure to investigate was not "prosecutorial misconduct" in the first instance, let alone a denial of due process. *See Mays*, 230 Ill.App.3d at 755. Mays, on the other hand, does not explain how Clay's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Darden,* 477 U.S. at 181. As such, Mays has failed to establish that the Illinois Appellate Court applied the facts of his case in an objectively unreasonable manner. *See Woodford v. Visciotti,* 537 U.S. 19, 24-25 (2002) (per curiam); *Harding v. Sternes,* 380 F.3d 1034, 1043 (7th Cir. 2004). Accordingly, the Court denies Mays' first habeas claim.

## II.     Claims 2 & 3 – Illinois State Law Claims

### A.     Brutal or Heinous Conduct

In Mays' second habeas claim, he alleges that his extended sentence was in violation of *People v. Andrews,* 132 Ill.2d 451, 139 Ill.Dec. 469, 548 N.E.2d 1025 (Ill. 1989) and *People v. Lucas,* 132 Ill.2d 399, 139 Ill.Dec. 447, 548 N.E.2d 1003 (Ill. 1989). The *Andrews* and *Lucas*

---

[2] Although the Illinois Appellate Court relied on Illinois case law when deciding this claim, the Illinois court is not required to cite United States Supreme Court cases or even be aware of such law, as long as neither its reasoning nor the result of the state court decision contradicts clearly established Supreme Court precedent. *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002).

decisions define, for purposes of Illinois law, "brutal or heinous" conduct that can support an extended term sentence. As such, Mays is asking the Court to make a determination as to whether an Illinois state court judge properly applied Illinois law. Simply put, Mays' argument is not cognizable on federal collateral review.

"[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *see also Perruquet,* 390 F.3d at 511 (claim not cognizable on habeas review does not present a federal issue). Therefore, the Court denies Mays' second habeas claim.

## B. "One Act One Crime" Rule

Similarly, in his third habeas claim, Mays argues that the Illinois Appellate Court failed to properly apply the Illinois "one act one crime" rule. Again, Mays is asking the Court to review a state court decision based on Illinois law. *See People v. Henry,* 204 Ill.2d 267, 290, 273 Ill.Dec. 374, 789 N.E.2d 274 (Ill. 2003) ("one act one crime" rule not a rule of constitutional dimension). For the reasons articulated above, Mays' third claim is not cognizable on habeas review, and thus the Court denies Mays' third habeas claim.

## III. Claims 4, 5, 6, & 7 – Ineffective Assistance of Trial and Appellate Counsel

Next, Mays contends that his trial and appellate attorneys provided constitutionally ineffective assistance of counsel. Specifically, Mays contends that his trial counsel was constitutionally ineffective for not calling a material witness. Mays also asserts ineffective assistance of trial counsel claims based on counsel's failure to object to the prosecutor's

improper impeachment, Mays' aggravated battery convictions, and to judicial bias. In addition, Mays contends that his appellate counsel was constitutionally ineffective for failing to raise trial counsel's ineffectiveness on these matters.

To establish ineffective assistance of counsel, Mays must show (1) his attorneys' performance "fell below an objective standard of reasonableness," *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Id.* at 694. If Mays fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See id.*

With respect to an attorney's performance, a "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689 (citation and quotations omitted). Under the prejudice prong, Mays must establish prejudice by a "reasonable probability." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

A.    **Material Witness Rule**

In his first post-conviction petition, Mays alleges ineffective assistance of trial counsel based on many factors. Mays, however, did not allege that trial counsel was ineffective for failing to call assistant State's Attorney Clay as a witness at the suppression hearing or trial. Instead, Mays made this argument for the first time in his petition for leave to appeal to the Illinois Supreme Court.

Habeas petitioners must give the state courts one full opportunity to resolve their constitutional claims by invoking one complete round of the state's appellate review process. *Boerckel*, 526 U.S. at 845. In other words, a "petitioner must establish that he fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge." *Bintz,* 403 F.3d at 863. Because Mays did not present this argument to the Circuit Court or the Illinois Appellate Court, he has failed to fulfill this requirement. *Id.*; *see also Lewis,* 390 F.3d at 1025-26 ("petitioner must raise the issue at each and every level in the state court system"). Hence, Mays has procedurally defaulted this claim.

Mays does not argue cause and prejudice to overcome his procedural default or that a fundamental miscarriage of justice will occur if the Court does not address his claim that trial counsel was ineffective for not calling assistant State's Attorney Clay as a witness. *See Coleman,* 501 U.S. at 750. Therefore, the Court denies this ineffective assistance of trial counsel claim.

Likewise, although Mays argued that his appellate counsel was constitutionally ineffective for not raising the material witness issue in his appeal from the Circuit Court's denial of his post-conviction petition and in his PLA, Mays never made this argument in his post-conviction petitions to the Circuit Court in the first instance. As the Seventh Circuit instructs in *Lewis,* to avoid procedural default, a habeas petitioner must bring his claim at every level in the state court system, including initially bringing his claim in his post-conviction petition. *See id.* at 1025-26. Because Mays failed to set forth this issue in his post-conviction petitions to the Circuit Court of Cook County, he has procedurally defaulted this claim. *Id.* Mays fails to argue

cause and prejudice or that the fundamental miscarriage of justice exception applies. *See Coleman,* 501 U.S. at 750. Therefore, the Court denies this ineffective assistance of appellate counsel claim, and thus denies Mays' fourth habeas claim in its entirety.

### B. Improper Impeachment

Next, Mays contends that his trial counsel was constitutionally ineffective for failing to object to a prior conviction used for impeachment purposes. Because the Illinois Appellate Court summarily affirmed the Circuit Court's denial of Mays' post-conviction petition, the Court turns to the Circuit Court's written decision to determine whether the Illinois court's decision was "contrary to" or an "unreasonable application" of clearly established Supreme Court law. *See Sanders v. Cotton,* 398 F.3d 572, 579 (7th Cir. 2005) (relevant opinion is decision of last state court to make a merits determination).

First, the Circuit Court properly cited and summarized the applicable United States Supreme Court precedent under *Strickland*, thus the Illinois court's decision is not "contrary to" clearly established Supreme Court law. *See* 28 U.S.C. § 2254(d)(1).[3] Second, the Illinois court determined that had the evidence of Mays' prior conviction been excluded, the trial court's finding at the suppression hearing would not have been different. *People v. Mays,* No. 87 CR 1598201, at 16 (Circuit Court, March 4, 1998) (unpublished order).

Mays does not explain why the Illinois court's conclusion was an unreasonable application of *Strickland*. Accordingly, the Court concludes that Mays has failed in his burden of establishing that the Circuit Court of Cook County applied the facts of his case in an

---

[3] It is well-established that *Strickland* qualifies as "clearly established Federal law, as determined by the Supreme Court of the United States." *See Williams v. Taylor,* 529 U.S. 362, 390-91, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

objectively unreasonable manner.  *See Visciotti,* 537 U.S. at 24-25; *see also United States v. Turcotte,* 405 F.3d 515, 537 (7th Cir. 2005) (unsubstantiated and conclusory statements do not support ineffective assistance of counsel claims).  The Court thus denies Mays' ineffective assistance of trial counsel claim based on the use of his prior conviction for impeachment purposes.

Mays also claims that his appellate counsel was ineffective for failing to raise his trial counsel's ineffectiveness concerning the State's use of impeachment evidence.  Again, the Court turns to the Circuit Court of Cook County's decision because it was the last court to determine the merits of this claim.  *See Sanders,* 398 F.3d at 579.  After reviewing the Circuit Court's opinion, the Court concludes that the Illinois court reasonably applied *Strickland* to the facts at hand.  First, the Circuit Court correctly noted that appellate counsel is not obligated to raise every conceivable argument on appeal.  Second, the Circuit Court reasoned that Mays must allege prejudice, that is, that appellate counsel's alleged errors affected the outcome of his appeal.  The Illinois court then concluded that because the underlying claim of ineffective assistance of trial counsel was without merit, Mays' claim of ineffective appellate counsel also lacked merit.  *People v. Mays,* No. 87 CR 1598201, at 22-23.

Although Mays claims he was prejudiced by appellate counsel's performance, he does not explain how he was prejudiced by counsel's failure to bring this claim on appeal.  *United States v. Farr,* 297 F.3d 651, 658-59 (7th Cir. 2002) (conclusory statements unsupported by facts do not satisfy prejudice prong of *Strickland*).  Without a more developed argument, Mays has failed in his burden of establishing that the Illinois Appellate Court applied the facts of his case in an objectively unreasonable manner.  *See Visciotti,* 537 U.S. at 24-25.  Therefore, the Court

denies Mays' fifth habeas claim.

**C. Aggravated Battery Claim**

Mays' sixth habeas claim is that his counsel was ineffective for failing to object to the Circuit Court finding him guilty of three counts of aggravated battery because these offenses are lesser included offenses of his attempted murder conviction. The double jeopardy clause of the Fifth and Fourteenth Amendments protects against multiple punishments for the same offense. *See Ohio v. Johnson,* 467 U.S. 493, 500-01, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). Here, the Circuit Court never sentenced Mays on these aggravated battery counts, accordingly, Mays was not "punished" for both the attempted murder conviction and the aggravated battery convictions. *See id.* Under these circumstances, Mays' double jeopardy allegation must fail. Because Mays' underlying double jeopardy claim has no merit, the Court cannot conclude that his attorneys were constitutionally ineffective for failing to raise this claim in a post-trial motion or on appeal. *See Roehl v. United States,* 977 F.2d 375, 379 (7th Cir. 1992).

**D. Judicial Bias**

Like his ineffective assistance of counsel claim based on the material witness rule, Mays did not allege that trial or appellate counsel were ineffective for failing to bring a judicial bias claim in his post-conviction petitions. Instead, Mays made this argument for the first time in his petition for leave to appeal to the Illinois Supreme Court. Because Mays failed to set forth this issue in his post-conviction petitions to the Circuit Court of Cook County and on appeal to the Illinois Appellate Court, he has procedurally defaulted this claim. *Lewis,* 390 F.3d at 1025-26. Mays does not argue cause and prejudice or that the fundamental miscarriage of justice

exception applies.  *See Coleman,* 501 U.S. at 750.  Therefore, he does not overcome his procedural default and the Court denies his ineffective assistance of trial and appellate counsel claim based on his allegations of judicial bias.

Mays also alleged a stand-alone claim of judicial bias in his post-conviction petition, which he also brings in his habeas petition under this ineffective assistance of counsel claim. Because Mays failed to bring his judicial bias claim in his direct appeal, the post-conviction Circuit Court determined that Mays waived this claim.  *See People v. Mays,* No. 87 CR 1598201, at 10-11.  Because waiver is an independent and adequate state law ground, this claim is also procedurally defaulted.  *See Coleman*, 501 U.S. at 729; *see also Gomez v. Jaimet,* 350 F.3d 673, 678 (7th Cir. 2003).  Mays offers no evidence of cause and prejudice or that a fundamental miscarriage of justice will occur, and thus the Court denies his claim.  *See Coleman,* 501 U.S. at 750.

## V.	Claim 8 – Apprendi Claim

Finally, Mays contends that his sentence is in violation of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).  *Apprendi,* however, is not retroactive on collateral review.  *Murillo v. Frank,* 402 F.3d 786, 790 (7th Cir. 2005) (citing *Schriro v. Summerlin,* 524 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004)).[4]  Therefore, Mays' final habeas claim fails.

---

[4]  In his Reply Brief, Mays also contends that his sentence is in violation of *United States v. Booker,* ___U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).  The *Booker* decision, however, is not retroactive on collateral review.  *McReynolds v. United States,* 397 F.3d 479, 480 (7th Cir. 2005).  Therefore, this additional claim fails.

## <u>CONCLUSION</u>

For these reasons, the Court denies Mays' petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254.

Dated: July 18, 2005

**ENTERED**

**AMY J. ST. EVE**
**United States District Judge**